**STATE of Wisconsin, Plaintiff-Appellant,**

v.

**WINNEBAGO COUNTY, Defendant-Respondent.**

Court of Appeals

*No. 94–3199. Submitted on briefs July 28, 1995.—Decided September 13, 1995.*

(Also reported in 540 N.W.2d 6.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Lorraine C. Stoltzfus*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John A. Bodnar*, corporation counsel.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.   The State of Wisconsin appeals a variance granted by the Winnebago County Board of Adjustment and then affirmed by the trial court. The

838

State primarily contends that shoreland setback requirements cannot result in an unnecessary hardship simply because they prevent the landowners from securing the highest and best use of the parcel. The State alternatively claims that the Board's decision should be overturned because it lacks a reasonable evidentiary basis. We agree on both issues and remand for further proceedings consistent with our decision.

Gilbert and Hazel Thiel own a 33.7 acre parcel on the shore of Lake Poygan. The parcel is "L" shaped. The base runs in an east-west direction along a county highway. The northern tip is adjacent to Lake Poygan, although in 1965 the Thiels dredged a channel which flows from the lake along the parcel's inside edge. According to information provided by the Thiels, the base measures approximately 200 feet between the road and the channel. The parcel reportedly measures roughly 175 feet from the channel to its western edge.

The Thiels dredged the channel with designs on future residential development and therefore made adequate allowances for the shoreland setbacks and roadway requirements[1] in effect at that time. These parameters, however, have increased over the years and now render the narrower, western portion of the parcel inappropriate for development. If the current shoreland setbacks (and roadway requirements) are enforced, only a 20-foot wide strip would remain buildable.

They nevertheless pursued plans to sell the land to a developer, who apparently informed the Thiels that

---

[1] The parcel has only limited frontage along the local highway. Therefore, a private road must be built to provide access to the proposed homesites located along the parcel's western portion.

the parcel would be well suited for eight units.[2] Thus, in October 1993 the Thiels applied to the Board seeking a variance for the shoreland setbacks. Caught between the greater shoreland requirements on one side, and wider roadways on the other, the Thiels summarized their predicament as follows:

> Over 28 years ago [we] dug the channel for future development. [We] allowed 33 ft. for a roadway. Presently the requirements are 50 ft. wide. [We] certainly had no idea that those rules would change.
>
> . . . .
>
> 4 parcels cannot be developed because of new rules and regulations for private roads. This will leave 4 parcels substandard. Too [sic] keep conformity the remaining 4 lots on channel should have same set back. This will enhance the subdivision and create a higher tax base.

In addition to the above information that was provided in the Thiels' application, the Board heard testimony from Mark Showers, who was the developer interested in the property. The Board also received letters from two nearby landowners; one objected to the variance citing concerns that the Thiels may have

---

[2] We use the terms unit, lot and parcel loosely since none of these sites have been officially platted or recorded. As the State characterizes them, they are lots "only in the developer's mind." Moreover, the record is unclear as to the exact number of residential lots that could possibly fit on the Thiels' land. The State notes in its brief that there are a total of nine available lots, but variances were only sought for eight. Nonetheless, this one unit discrepancy, while illustrating the Board's lack of factfinding, does not affect the substance of our decision.

erred in their measurement of the parcel.[3] The Department of Natural Resources also sent a letter to the Board objecting to the variance. The DNR claimed that the hardship was self-created and that the parcel was not physically unique. Letter from Tere Locke, Water Management Specialist, *State of Wisconsin Department of Natural Resources*, to Kathy Larsen, *Winnebago County Zoning Department* (Nov. 15, 1993). The DNR was also concerned about increased run-off into Lake Poygan. *Id.*

The Board deliberated over this evidence and reached its decision. It granted the variance to cover the four lots along the western edge, which would be nondevelopable under the current setbacks, but refused the Thiels' request concerning the other four. To support the variance, the Board set out the following findings:

> Exceptional Circumstances: This channel was dredged in 1965 when shore-yard setbacks were 50 feet and the road width could have been 33 feet. Now, with a minimum 50-foot road and a required 75-foot shore-yard setback, there is not sufficient area left between setbacks for home construction.
>
> Preservation of Property Rights: Without a variance these lots could not be developed to their highest and best use.
>
> Absence of Detriment: The planning for these lots began over thirty years ago and steps were taken to allow channel-front homesites. The uniformity of

---

[3] The Thiels submitted a sketch, based on the developer's measurements, which indicated that the base of the parcel measured 200 feet deep from the channel to the roadway. A neighboring couple explained, however, that their survey showed this measurement to be 170 feet.

setbacks along the channel will provide orderly development and will create an aesthetic environment for all affected lots.

Subsequently, the State filed a writ of certiorari to the Winnebago County Circuit Court challenging this decision. *See* § 59.99(10), STATS.; *see also State ex rel. DNR v. Walworth County Bd. of Adj.,* 170 Wis. 2d 406, 412, 489 N.W.2d 631, 633 (Ct. App. 1992). The court concluded that the issue narrowed to whether the change in setback requirements, coupled with the Thiels' earlier good faith efforts at development, constituted an unnecessary hardship thus warranting a variance. After reviewing the record, the court found that the Board acted according to law and that there was sufficient evidence to support its conclusion. It therefore dismissed the State's petition.

The State now reasserts its challenge. We address this question without deference to the trial court and examine the record de novo. *Clark v. Waupaca County Bd. of Adj.,* 186 Wis. 2d 300, 303, 519 N.W.2d 782, 784 (Ct. App. 1994). Our review is limited to four issues: (1) whether the Board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the determination in question. *Id.* at 304, 519 N.W.2d at 784. The State's arguments against the variance focus on the second and fourth elements.

842

We first address the State's claim that the Board did not follow applicable law.[4] The Board's power is derived from § 59.99(7)(c), STATS., which permits it to grant variances from local land use restrictions when "literal enforcement of the provisions of the ordinance will result in unnecessary hardship."[5] The supreme court has defined unnecessary hardship "as a situation where in the absence of a variance no feasible use can be made of the land." *Snyder v. Waukesha County Zoning Bd. of Adj.*, 74 Wis. 2d 468, 474, 247 N.W.2d 98, 102 (1976) (quoted source omitted). Then in *Arndorfer v. Sauk County Bd. of Adj.*, 162 Wis. 2d 246, 254-56, 469 N.W.2d 831, 834-35 (1991), the court further refined this standard to require showing the "uniqueness" of the condition affecting the parcel and that the variance will "not be contrary to the public interest." *See* § 59.99(7)(c).

The State raises a series of arguments which reveal that the Board erred when it applied these standards to the Thiels' application. First, the Board was

___

[4] Both parties included several references to the Winnebago County General Ordinances in their briefs to this court. Nonetheless, copies were not included in the record. We therefore have ordered that the record be supplemented. Moreover, the County appears to have cited a nonexistent ordinance, WINNEBAGO COUNTY, WIS., GENERAL ORDINANCE § 17.29(7). We have made an appropriate correction in the text of the opinion after concluding that the substance of the cited ordinance was embodied in § 17.32(7).

[5] In its findings, the Board specifically cited to WINNEBAGO COUNTY, WIS., GENERAL ORDINANCE § 17.31(4)(b), which tracks the state enabling statute. *See* § 59.99(7)(c), STATS. Whether the County acted in technical accordance with local law, however, is irrelevant to our analysis as we gauge its actions in light of the standards prescribed by the State.

mistaken in its assessment of the limitations on the parcel's feasible use. During the hearings, Showers explained why the variance was needed. He stated how the property "was more or less a long-term investment for [the Thiels], and without getting a variance, the land isn't worth anything compared to what it would be if we do get the variance." These statements seemed to have persuaded the Board as it concluded: "Without a variance these lots could not be developed to their highest and best use."

We thus see that the test used by the Board was whether the variance would *maximize* the economic value of the property. This is not the proper test.[6] There must be a showing that no feasible use can be made of the property.[7] Since there is uncontroverted evidence that at least four units could be developed on the Thiels' land, we find it difficult to understand how this record translates into a "no feasible use" situation.[8] Concerns over the most profitable use of a parcel

[6] The "highest and best use" analysis does, however, have a role in other types of legal analysis. *See, e.g., Clarmar Realty v. Redevelopment Auth.*, 129 Wis. 2d 81, 91-93, 383 N.W.2d 890, 894-95 (1986) (determining just compensation for government takings); *Lac LaBelle Golf Club v. Village of Lac LaBelle*, 187 Wis. 2d 274, 288-89, 522 N.W.2d 277, 283 (Ct. App. 1994) (valuation for assessment purposes).

[7] In *DeLap v. Institute of America, Inc.*, 31 Wis. 2d 507, 512, 143 N.W.2d 476, 478 (1966), the supreme court considered the definition of "feasible" and concluded that it meant "capable of being done." In the context of variances, we believe this translates into a determination of whether there can be any beneficial use of the property.

[8] A review of the proceedings reveals that the Board approached the Thiels' application by dividing the whole parcel into two components: the four lots along the base and the four

844

are not proper grounds for granting variances. *See State v. Ozaukee County Bd. of Adj.,* 152 Wis. 2d 552, 563, 449 N.W.2d 47, 51 (Ct. App. 1989) ("The variances were thus admittedly granted for the county's economic gain. Standing alone, that is an insufficient basis upon which to grant a variance.").[9]

The State also argues that the Board erred in its conclusion that the Thiels' land was sufficiently unique. *See Arndorfer,* 162 Wis. 2d at 255-56, 469 N.W.2d at 834. Here, the Board reasoned that, unlike other parcels, the changing roadway and shoreland setback requirements uniquely affected the Thiels' property because their initial capital investment was made thirty years ago. Indeed, during its deliberations,

---

lots along the western edge. The Board then concluded that the four western lots were deserving of a variance because only a 20-foot wide strip of land would remain if the setbacks were enforced. However, the Board also recognized that "the Thiels are going to sell this all to this developer." Therefore, there was no basis for the Board to analyze the parcel on a piecemeal basis since the Thiels presented the parcel as a single unit. While segmentation may be appropriate in other types of legal analysis, *see Zealy v. City of Waukesha,* 194 Wis. 2d 702, 714-18, 534 N.W.2d 917, 922-24 (Ct. App. 1995) (whether there is a "taking" of property), here the Board should examine all 33.7 acres as a whole when it reaches a conclusion about granting a variance.

[9] We recognize that this principle is a fundamental element of zoning law. As one commentator has explained:

> Under the various definitions of "practical difficulty and unnecessary hardship" the situation of the property owner seeking a variance must be unique and not common to others. However, it is well settled in an established line of cases that the mere fact that a lot or property owner will suffer financial hardship if not granted a variance is not sufficient, standing alone, to authorize the variance.

3 E.C. Yokley, ZONING LAW AND PRACTICE § 21-8, at 333 (4th ed. 1979).

the Board appeared very sympathetic towards the Thiels because their long-term, "good faith" efforts were being stalled by changing governmental regulations.[10]

Nevertheless, the Board erred again because it looked at the effects of the hardship rather than its cause. It is correct that county and statewide regulations interrupted the Thiels' development plans. However, the environmental regulations merely place this land in a similar position to other shoreland property in Winnebago County which also has experienced a decrease in development capacity. If owners of shoreland want to change the effect of the shoreland requirements upon their land, they should petition government for a change in the law rather than individually seek relief from the local board of adjustment. *See Arndorfer,* 162 Wis. 2d at 256, 469 N.W.2d at 834 ("where the hardship imposed on the applicant's land is shared by nearby land, relief should be addressed through legislative, rather than administrative means.").

Finally, the State complains that the Board failed to consider whether the variance would be contrary to the public interest. *See id.* at 256, 469 N.W.2d at 835. The DNR approached the Board with its concerns about increased pollution in Lake Poygan. Although

---

[10] Under WINNEBAGO COUNTY, WIS., GENERAL ORDINANCE § 17.32(7)(a), the Board must find "exceptional, extraordinary or unusual circumstances or conditions applying to the lot or parcel" before it may grant a variance. We find that this standard is analogous, in substance, to a finding of uniqueness. *See Arndorfer v. Sauk County Bd. of Adj.,* 162 Wis. 2d 246, 255-56, 469 N.W.2d 831, 834 (1991).

the Board made no specific findings on this issue, to support its decision the Board now asserts that the DNR did not provide an evidentiary basis for its recommendations. Such reasoning, however, overlooks the significance of the state legislature's findings which are the foundation of these shoreland ordinances. The State of Wisconsin has determined that protecting navigable waters is in the public interest. *See* § 144.26(1), STATS. Moreover, in pursuit of this policy goal, the legislature has empowered the DNR to develop water conservation standards, § 144.26(3), and to disseminate these "general recommended standards and criteria" to local municipalities. Section 144.26(6); *see generally* WIS. ADM. CODE § NR ch. 115. These rules and regulations in no way suggest that the State must present specific factual findings to ensure compliance with shoreland setback requirements. Rather, the burden is shifted to the landowner to present evidence that the desired variance is not contrary to the public interest furthered by the shoreland ordinances. *See Arndorfer,* 162 Wis. 2d at 256, 469 N.W.2d at 835.

We reach the second issue raised by the State as an alternative basis for our decision. Here, it argues that the Board acted upon the Thiels' application without a sufficient evidentiary basis. *Compare id.* at 256-58, 469 N.W.2d at 835.[11] The Thiels did not present any certi-

---

[11] The local ordinance requires the Board to make findings before granting a variance. It states:

> FINDINGS. No variance to the provisions of this Ordinance shall be granted by the Board unless it finds, *beyond a reasonable doubt,* that all the following facts and conditions exist and so indicates in the minutes of its proceedings.

WINNEBAGO COUNTY, WIS., GENERAL ORDINANCE CODE § 17.32(7) (emphasis added). Our review, however, is founded upon state law which only requires the adjustment board to have a reason-

847

fied surveys or plat maps showing the exact effects of the setback requirements. The record consisted of several hand-detailed "site plans" and a computer-generated mapping set at 1:1200 scale. Indeed, during the hearing and deliberations some Board members expressed concern about the Thiels' measurements. However, the Board was sympathetic to the possibility that the Thiels would not want to sink costs into having the property surveyed, given the risk that the variance might not be granted.

Nonetheless, we agree with the State and hold that the record was insufficient for the Board to make a reasonable determination about granting the variance. Although there certainly are circumstances in which a zoning board does not need certified, detailed surveys and plans to reach a supportable conclusion regarding a variance, in this instance the major issue was the effect of 75-foot setbacks (and 50-foot roadways) on a parcel which was reportedly 175 feet in width. Moreover, there was evidence placed before the Board that some of the Thiels' measurements were incorrect. We are unable to see how the Board could draw a reasonable conclusion about the available buildable area and thus whether a variance should even be considered. It was reaching conclusions involving 10- to 20-foot measurements. This degree of precision would suggest to a reasonable decisionmaker that the risk of error warranted the use of certified surveys.

able factual basis for its findings. *See Snyder v. Waukesha County Zoning Bd. of Adj.*, 74 Wis. 2d 468, 475, 247 N.W.2d 98, 102 (1976); *cf. State v. Ozaukee County Bd. of Adj.,* 152 Wis. 2d 552, 557, 449 N.W.2d 47, 49 (Ct. App. 1989) (county law required that board of adjustment be provided with convincing evidence).

Finally, we acknowledge the line of authority, cited by the Board, which cautions against judicial interference in local zoning. *E.g., Buhler v. Racine County,* 33 Wis. 2d 137, 146-47, 146 N.W.2d 403, 408 (1966). Our concern with the Board's decision, however, does not reflect any judgment over the necessity of the variance on the Thiels' parcel. Rather, we reject the Board's findings because the membership failed to comply with the duties prescribed by state law.

*By the Court.*—Judgment reversed and cause remanded.