STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

KENOSHA COUNTY BOARD OF ADJUSTMENT, Defendant-Respondent.

Supreme Court

*No. 96–1235. Oral argument March 3, 1998.—Decided May 27, 1998.*

(Also reported in 577 N.W.2d 813.)

For the plaintiff-appellant-petitioner the cause was argued by *Lorraine C. Stoltzfus*, assistant attorney

general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-respondent there was a brief by *Debra S. Bursinger*, senior assistant corporation counsel, and *Kenosha County Corporation Counsel's Office*, Kenosha and oral argument by *Debra S. Bursinger*.

Amicus curiae was filed by *William P. O'Connor, Jennifer S. McGinnity,* and *Wheeler, Van Sickle & Anderson, S.C.*, Madison for The Wisconsin Association of Lakes, Inc.

¶ 1.  JANINE P. GESKE, J.   On this review we consider whether the Kenosha County Board of Adjustment (Board) properly applied the legal standard for determining unnecessary hardship in order to grant a petition for an area variance. The Board determined that the variance applicant, Ms. Janet Huntoon, would suffer unnecessary hardship if she were denied a variance enabling her to build a deck extending into the protected shoreyard of Hooker Lake. The circuit court, the Honorable Michael Fisher presiding, upheld the Board's decision, and the court of appeals affirmed.[1] We conclude that the legal standard of unnecessary hardship requires that the property owner demonstrate that without the variance, he or she has no reasonable use of the property. We conclude that the Board did not properly apply this legal standard and that its decision to grant the variance was not reasonably based on the evidence. We therefore reverse the decision of the court of appeals and remand for further proceedings consistent with this opinion.

---

[1] *State v. Kenosha County Bd. of Adjustment*, 212 Wis. 2d 310, 569 N.W.2d 54 (Ct. App. 1997).

## FACTS AND PROCEDURAL HISTORY

¶ 2.    Janet Huntoon owns six adjoining parcels of land on property abutting Hooker Lake, a navigable body of water located in the town of Salem, in the county of Kenosha, Wisconsin. Five of the lots in this unincorporated area are undeveloped; a house was built on the sixth lot in 1936 by Huntoon's grandfather. The home is in the R–4 Urban Single Family Residential zoning district. The land running between the house and the lake is sloped. When the house was built, 33 concrete steps were laid along the slope down to the lake. Huntoon's family has continuously owned the house and the parcels.

¶ 3.    In anticipation of her move into the house, Huntoon sought to construct a deck facing the lake. Huntoon had all of the pine trees and shrubs on the slope in front of her house and facing the lake removed, based on her builder's statement that she would not need a variance to build the deck.

¶ 4.    After clearing the vegetation in the area and making measurements, Huntoon discovered that she would need a zoning variance. Without the deck, the existing house sits 78 feet away from the ordinary high-water mark of Hooker Lake. As proposed, the 14-foot by 23-foot deck would violate both the state statute and the county ordinance requiring a 75-foot setback for all structures adjacent to navigable bodies of water in unincorporated areas.

¶ 5.    Sections 59.971[2] and 144.26[3] of the Wisconsin Statutes require counties to zone the shorelands of

---

[2] **Wis. Stat. § 59.971 (1993–94) Zoning of shorelands on navigable waters. (1)** In this section: . . .

(b)    "Shorelands" means the area within the following distances from the ordinary high-water mark of navigable waters, as defined under s. 144.26(2)(d): . . .

navigable waters. Pursuant to those provisions, the Kenosha County General Zoning and Shoreland/Floodplain Zoning Ordinance (Kenosha County Shoreland Ordinance) was adopted. Section 12.21–4(g)2 of the ordinance requires that structures in the R–4 zoning district be no less than 75 feet away from the ordinary high-water mark of any navigable water. This provision tracks Section NR 115.05(3)(b)1

> (1m)   To effect the purposes of s. 144.26 and to promote the public health, safety and general welfare, each county shall zone by ordinance all shorelands in its unincorporated area. . . .
>
> (4)(b)   Variances and appeals regarding shorelands within a county are for the board of adjustment for that county under s. 59.99 and the procedures of that section apply.

Section 59.971, Stats., has been renumbered and is currently designated Wis. Stat. § 59.692 in the 1995–96 volume. See 1995 Wis. Act 201. The substance of the statute has not been changed. Throughout this opinion, we refer to the volume of statutes in effect at the time of the Board of Adjustment's action on Huntoon's application.

[3] **Wis. Stat. § 144.26 (1993–94) Navigable waters protection law. (1)** To aid in the fulfillment of the state's role as trustee of its navigable waters and to promote public health, safety, convenience and general welfare, it is declared to be in the public interest to make studies, establish policies, make plans and authorize municipal shoreland zoning regulations for the efficient use, conservation, development and protection of this state's water resources. The regulations shall relate to lands under, abutting or lying close to navigable waters. The purposes of the regulations shall be to further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty.

Wis. Stat. § 144.26 has been renumbered and is currently designated Wis. Stat. § 281.31 in the 1995–96 volume. See 1995 Wis. Act 227. The substance of the statute has not been changed.

400

(1985) of the Wisconsin Administrative Code, a state-wide provision applying to unincorporated areas and requiring a minimum setback of 75 feet from the ordinary high-water mark of an adjacent body of water to the nearest part of a building or structure, except piers, boathouses, and boat hoists. The 75-foot setback provision is an environmental conservation measure. *See* Wis. Stat. § 144.26; Wis. Admin. Code. § NR 115.01(2); and Kenosha County Shoreland Ordinance at 12.01–2(a).

¶ 6. On March 22, 1995, Huntoon filed an application with the Kenosha County Office of Planning and Development requesting approval of her plans to construct a 14-foot by 23-foot attached deck, and to reduce her shoreline setback to 64 feet. The Office of Planning and Development denied the application because the proposed deck would violate the setback requirement.

¶ 7. Huntoon then petitioned the Kenosha County Board of Adjustment for a zoning variance to allow construction of the deck.[4] The Department of Natural Resources (DNR) reviewed the request and recommended that the Board deny it. The DNR asserted that Huntoon could not meet the statutory requirement of unnecessary hardship, and that constructing the deck would be contrary to the purpose of the shoreland zoning statutes and the public interest.

¶ 8. On May 4, 1995, the Board conducted a public hearing on Huntoon's petition. Huntoon explained that she intended to move into the house in the near future. She testified that a deck would update the house, make the house look more attractive, and be used for recreational purposes and a view of the lake.

---

[4] Huntoon had previously received approval to build the deck from the Town of Salem Plan Commission and the Town Board.

According to the transcript of that hearing, neither Huntoon nor her representative Phillip Cayo mentioned any concern about a safety problem.

¶ 9. The Board unanimously voted to grant the variance request. The hearing minutes show that the Board approved the variance for the following reasons:

> 1. There are many properties surrounding the lake that are much closer than the petitioner proposes, including a number of homes on the north side of the lake which is the same side as the petitioner and further west who are almost right up to the lake.
>
> . . .
>
> 3. Homes built prior to the enactment of the ordinance should be granted special consideration particularly when we are dealing with the lake view, which is why taxes are higher. To deny this request would be confiscatory and unreasonable.
>
> 4. The owner did not cause the situation, therefore the problem is not self created.
>
> 5. The petitioner's request is modest.
>
> 6. The steep incline from the waters edge to the subject residence is dangerous and the construction of a deck as proposed would provide greater safety.
>
> 7. The variance, if granted, meets all the standards and guidelines set forth in 12.36–13 of the Kenosha County Zoning ordinance.

¶ 10. At the DNR's request, the State initiated a certiorari proceeding, pursuant to Wis. Stat. § 59.99(10),[5] in Kenosha County Circuit Court on June

---

[5] Wis. Stat. § 59.99(10) (1993–94) has been renumbered to Wis. Stat. § 59.694(10) in the 1995–96 volume. The substance of the statute has not been changed.

5, 1995, for review of the Board's action. On July 6, 1995, the Board conducted a public hearing to reconsider its grant of the variance. In the interim between the two Board meetings, Huntoon's deck was built.

¶ 11. The Board took testimony from Huntoon and Cayo at this second hearing. Huntoon testified that "I believe the steep slope limits the use of the property because there's no room there for anything as far as like a table or chairs or anything at the top of that hill." Huntoon also stated "I can't use that front area of the house without something there as far as to use to walk on and things like that. So, and as valuable as that property is, I would like to have some reasonable use out of it rather than just leave it bare in the front and not even be able to walk out there."

¶ 12. Huntoon's representative, Cayo, also testified at the second Board meeting. His remarks included the following:

> "Even though we created a deck for pleasure, we did not impact any way on the lake, which was one of our big concerns. . . .All of a sudden now we have a home that was built and to replace the front stoop and make it look like a more modern, a more, a home that's where you can enjoy yourself at the lake . . ."

¶ 13. The only reference to safety by either witness was Cayo's remark that

> "[i]n this case, that little bitty front porch, I would call it just a stoop, a step off was removed and a nice, a nice deck put on. The old stoop that was 60 years we figure. . .sixty, sixty some five years old, it was about time somebody took it off, off the front of that house before somebody fell off of it and got hurt, so . . ."

¶ 14.  After taking testimony, the Board supplemented its previous reasoning with the following findings of fact and analysis:

1.  Unnecessary Hardship—

Petitioner has stated the house was built in the 1930's prior to shoreland zoning setbacks by her mother's family. She also stated that approximately 15' of shoreline has been lost since then, due to erosion. She has further stated that there are other structures directly in her view across the lake with less setback from the lake.

The Board finds that strict conformity with the ordinance in Janet Huntoon's case would be *unnecessarily burdensome* because she would be denied a use that a great many other lakefront property owners do enjoy at a much closer setback than the 64' in question. (Emphasis in original.)

Janet Huntoon has not had a real estate appraiser give a value loss should a deck be denied, but it is the Board's belief that there would be a loss of value if setback relief is denied.

2.  Unique Property Limitation—

The petitioner has stated that the property in question is situated on a hill overlooking the lake. The steep slope to the lake is covered with mature trees and vegetation except for the portion in a direct line to the lake from her house and proposed deck. She has also stated that there is not a flat area on the lake front side of her house and that the existing door faces the lake.

The Board finds that the petitioner is faced with unique limitations caused by:

404

    a.   The steep slope to the lake which begins as you exit the house, the deck will provide a safety barrier

    b.   An estimated 15' of shoreline has been lost due to erosion.

3.   Protection of the Public Interest—

The Board believes that the public interest is served best and the spirit of the ordinance followed when citizens are allowed a reasonable use of existing structures, that are in good condition, for a project that does not cause harm to the public.

The Board further believes that the buffer to the lake will remain intact with no loss of mature trees and vegetation and that there will be no impact on water quality, habitat or esthetics. To further protect the public interest this Board does stipulate following:

(various conditions on the deck design and landscaping).

The Board again unanimously approved the variance.

¶ 15.   On July 31, 1995, the State filed a second certiorari review action. The circuit court, the Honorable Michael Fisher presiding, consolidated the two certiorari actions. Considering the briefs and the record before the Board, on March 5, 1996, the circuit court affirmed the Board's decision. The circuit court rejected the DNR's arguments that the Board had proceeded on an incorrect theory of law and that the Board's decision was unreasonable because it was not supported by the evidence presented. The State appealed. The court of appeals affirmed the judgment of the circuit court. We granted the State's petition for review.

¶ 16. "Wisconsin has a long history of protecting its water resources, its lakes, rivers, and streams, which depend on wetlands for their proper survival." *Zealy v. City of Waukesha*, 201 Wis. 2d 365, 382, 548 N.W.2d 528 (1996). To ensure this protection, the legislature has authorized the DNR to develop water conservation standards, and to "disseminate these general recommended standards and criteria to local municipalities." *State v. Winnebago County*, 196 Wis. 2d 836, 847, 540 N.W.2d 6 (Ct. App. 1995). The purpose of state shoreland zoning standards is to "further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty." Wis. Stat. § 144.26; Wis. Adm. Code § NR 115.01(2). The basic purpose of a shoreland zoning ordinance "is to protect navigable waters and the public rights therein from the degradation and deterioration which results from uncontrolled use and development of shorelands." *Just v. Marinette County*, 56 Wis. 2d 7, 10, 201 N.W.2d 761 (1972).

¶ 17. The State, through an enabling statute, Wis. Stat. § 59.99(7),[6] has given county boards of adjustment the power to grant exceptions to zoning regulations known as "variances." The boards are empowered:

> To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to spe-

---

[6] Wis. Stat. § 59.99(7) (1993–94) has been renumbered to Wis. Stat. § 59.694(7)(1995–96) without a change in substance.

cial conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

Wis. Stat. § 59.99(7)(c).

¶ 18. The Kenosha County Board of Supervisors has authorized the use of that state-granted power by its Board of Adjustment through the Kenosha County Shoreland Ordinance, at 12.36–1, which reads:

> It is the intent of this section of the Ordinance to recognize that under certain conditions and circumstances, it may be necessary to obtain a variance from the terms of this Ordinance so long as said variance will not be contrary to the public interest, and where, owing to special conditions, a literal enforcement of the provisions of the Ordinance will result in unnecessary hardship or practical difficulties and where the granting of such variance will uphold the spirit of this Ordinance and contribute to the justice of the particular case in question. Any variance granted under the terms of this ordinance shall, however, relate only to area requirements and not to use.

■

¶ 19. The language used in the county ordinance setting forth the conditions under which variances may be granted is virtually identical to the language used in the statute providing for variances. Both the statute and the ordinance specify that a variance may be granted only where it is not "contrary to the public interest." Wis. Stat. § 144.26; Kenosha County Shoreland Ordinance 12.36–1. The legislature has defined the public's interest in restricting shoreland development as several interests, including maintaining

health and safety, minimizing pollution, sustaining aquatic life, and preserving natural beauty.

¶ 20. Both the statute and the ordinance also specify that the variance applicant demonstrate "special conditions" to justify granting the variance. The county ordinance sets out more fully several standards and guidelines for the Board to consider[7] in determining whether to grant a variance:

> 1) The existence of special conditions or exceptional circumstances on the land in questions [sic].
>
> 2) The experiencing of unnecessary hardships or practical difficulties on the land in question either presently or in the future.
>
> 3) That these hardships or difficulties are the result of the aforementioned special conditions existing on the land and are not self-inflicted.
>
> 4) That the existence of these special conditions will restrict the use of the land if the Ordinance is applied literally so as to render the land useless. . . .
>
> 7) That the variance(s) requested are the minimum variance(s) needed to alleviate difficulties or hardships. . . .
>
> 9) That granting the variance applied for will not affect the public health, safety, morals and welfare

---

[7] It is not clear from the language of the Kenosha County ordinance whether it meant the "standards" and "guidelines" to be directory or mandatory. The prefatory language of the ordinance subsection states: "In determining whether a variance is to be granted, the following standards and guidelines must be met in view of the evidence presented and in making its decision, these standards and guidelines shall be addressed by the Board of Adjustment." Kenosha County Shoreland Ordinance 12.36–13(a).

of the community and other properties in the area.
. . .

(b)   Variances may be granted for example for reasons of topography, environmental protection or where permitted by state statute but in no event may a variance be granted where the primary reason for obtaining a variance is to obtain a more profitable use of the property, personal inconvenience, construction errors, economic reasons, self-created hardship, or where the property is presently a non-conforming use. . . .

Kenosha County Shoreland Ordinance at 12.36–13.

¶ 21.   Both the statute and the ordinance specify that a variance applicant show "unnecessary hardship" to justify receiving the variance. Only the county ordinance defines that term:

UNNECESSARY HARDSHIP

The circumstance where special conditions, which were not self-created, affect a particular property and make strict conformity with restrictions governing dimensional standards (such as lot area, lot width, setbacks, yard requirements, or building height) unnecessarily burdensome or unreasonable in light of the purpose of this Ordinance. Unnecessary hardship is present only where, in the absence of a variance, no feasible use can be made of the property.

Kenosha County Shoreland Ordinance, definitions.

¶ 22.   While the county ordinance permits the granting of a variance upon the showing of either "unnecessary hardship or practical difficulties," this court has already decided that there is no significant distinction between the meaning of the two terms. *See Snyder v. Waukesha County Zoning Bd. of Adjustment*,

74 Wis. 2d 468, 474, 247 N.W.2d 98 (1976). As such, the Kenosha County Shoreland Ordinance does not actually impose a standard different than that imposed by the statute.

¶ 23.   Proof of unnecessary hardship includes the burden of proving "uniqueness." *See Arndorfer v. Board of Adjustment*, 162 Wis. 2d 246, 254, 469 N.W.2d 831 (1991). We take the ordinance requirement in 12.36–13(a)1 of "special conditions or exceptional circumstances on the land" in question to be analogous to the statute's requirement of uniqueness. *See, e.g., Winnebago County*, 196 Wis. 2d at 846 n.10. In *Winnebago County*, the county ordinance required the board to find a condition of the lot "exceptional, extraordinary or unusual" before it could grant the variance. The court of appeals, relying on our decision in *Arndorfer*, 162 Wis. 2d at 255–56, concluded that the ordinance's standard was substantially analogous to a finding of uniqueness, as required by statute.

¶ 24.   Huntoon sought a variance from the Kenosha County Shoreland Ordinance. A variance applicant has the burden to prove that a literal application of the zoning ordinance will result in unnecessary hardship. *See Arndorfer*, 162 Wis. 2d at 253.

## II.

¶ 25.   On statutory certiorari review, when the circuit court does not take additional evidence, we limit our review to 1) whether the Board kept within its jurisdiction; 2) whether it proceeded on a correct theory of law; 3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and 4) whether the Board might reasonably

make the order or determination in question, based on the evidence. *See Arndorfer*, 162 Wis. 2d at 254. In this case, the State's challenge focuses on the second and fourth criteria.

¶ 26.    The State first asserts that the Board failed to proceed on a correct theory of law by incorrectly applying the legal standard for what constitutes "unnecessary hardship." Because the statute does not define "unnecessary hardship," the State relies on case law to contend that the test for whether an ordinance imposes an unnecessary hardship on an area variance petitioner is whether the property owner will have no reasonable use of the property without the variance.[8] In this case, the State disputes that Huntoon has suffered an unnecessary hardship because she maintains a reasonable use of her property. The home has been used as a residence for over 60 years. Instead of establishing unnecessary hardship, according to the State, Huntoon has only established that her reasons for seeking a variance are reasons of personal inconvenience.

¶ 27.    The Board contends that the standard is neither "no feasible use"[9] nor "no reasonable use" but

---

[8] In its briefs to the court of appeals, the State contended that the standard for determining "unnecessary hardship" was "no feasible use." In its briefs to this court and at oral argument, the State modified its terminology to contend that the proper standard was "no reasonable use in the absence of a variance."

[9] The Board apparently is not relying on the definition of unnecessary hardship as found in the ordinance: "unnecessary hardship is present only where, in the absence of a variance, *no feasible use* can be made of the property." Emphasis added. The terms of the Kenosha County Shoreland Ordinance are arguably more restrictive than the statute permitting variances. This court has previously concluded that "counties in this state have

instead is whether strict compliance with the ordinance will be "unnecessarily burdensome." The State and the Board also disagree whether the same statutory standard applies to area variances as applies to use variances.[10]

¶ 28. The rules for interpretation of ordinances and statutes are the same. *See State v. Ozaukee County Board of Adjustment*, 152 Wis. 2d 552, 559, 449 N.W.2d 47 (Ct. App. 1989). Interpretation of statutes presents a question of law that reviewing courts decide independently. *See id.*

¶ 29. In a previous application of the zoning statute, we described an unnecessary hardship as where "compliance with the strict letter of the restrictions governing area, set backs, frontage. . .would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome." *Snyder*, 74 Wis. 2d at 475, citing 2 Rathkopf, *The Law of Zoning and Planning*, 45–28 (3d ed. 1972). The *Snyder* court also pointed out that whether a particular hardship is

broad authority to zone shoreland area in a manner that is more restrictive than the minimum standards set forth by the DNR." *County of Adams v. Romeo*, 191 Wis. 2d 379, 384 n.1, 528 N.W.2d 418 (1995). Nonetheless, because the Board's argument is focused on the statutory standard, and because the statute and ordinance do not conflict, our analysis is limited to application of the statutory standard.

[10] Both parties, and the court of appeals, have spent some time trying to differentiate, either in words or in application, the tests for granting a use variance and an area variance. Neither party disputes that Huntoon has requested an area variance. Thus, for purposes of this case, we need not decide whether there is a difference between the two types of variances, and what that difference may be.

unnecessary or unreasonable is judged against the purpose of the zoning law. *See id.* at 473. Later, in *Arndorfer*, we also emphasized that the unnecessary hardship test, and in particular its requirement of a unique condition facing the property owner's land, is essential to "prevent the purposes of the zoning regulations from being undermined by the granting of piecemeal exceptions to those regulations." 162 Wis. 2d at 255.

¶ 30. The fundamental difference between the parties' definitions of the unnecessary hardship standard is the extent to which those definitions incorporate the purpose of the shoreland zoning regulations—to enforce a uniform setback that preserves the public's interest in shoreland and the navigable waters of the state. Under the State's definition, the issue is whether the Board and reviewing courts look first to the purpose of the shoreland zoning ordinance and then at the applicant's request. The Board seems to argue that the reviewing bodies look at the applicant's request primarily in terms of the burden on the applicant. In both our *Snyder* and *Arndorfer* decisions, we emphasized that the purpose of the zoning regulations, including uniformity, should not be lost in the determination of whether to grant a variance.

¶ 31. We agree that the State's definition of unnecessary hardship—no reasonable use of the property without a variance—is compatible with the concerns we expressed in *Snyder*. This articulation is also consistent with the recent decision in *Winnebago County*, 196 Wis. 2d 836, where the court of appeals held that the proper test is not whether a variance would maximize the economic value of the property, but whether a feasible use is possible without the variance.

¶ 32.  This definition also clarifies that in *Snyder* we did not mean that a variance could be granted when strict compliance would prevent the property owner from undertaking *any of a number of* permitted purposes. Rather, when the record before the Board demonstrates that the property owner would have a reasonable use of his or her property without the variance, the purpose of the statute takes precedence and the variance request should be denied.[11]

[11] Other states have used the "no reasonable use" standard as part of their test for determining unnecessary hardship. *See, e.g., Thompson v. Planning Comm'n of City of Jacksonville*, 464 So. 2d 1231, 1237 (Fla. Dist. Ct. App. 1985) (hardship necessary to obtain a variance may not be present unless there is a showing that no reasonable use can be made of the property without the variance); *Parkview Colonial Manor Inv. Corp. v. Board of Zoning Appeals of City of O'Fallon*, 388 N.E.2d 877, 881 (Ill. App. Ct. 1979) (variance may not be granted absent a showing that the practical difficulty or unnecessary hardship would deprive the owner of the reasonable use of his property); *Your Home, Inc. v. Town of Windham*, 528 A.2d 468, 471 (Me. 1987) (in determining whether property owner would suffer undue hardship in absence of zoning variance, property owner not entitled to maximum return on his or her investment but to some reasonable use); *Husnander v. Town of Barnstead*, 660 A.2d 477, 478 (N.H. 1995) (where application of ordinance prevents property owner from making any reasonable use of the land, sufficient hardship exists to grant variance); *Gadhue v. Marcotte*, 446 A.2d 375, 376 (Vt. 1982) (if any reasonable use could be made of property, where the use is in strict conformity with the zoning regulations, the requirements for granting variance are not satisfied); *Buechel v. State Dep't. of Ecology*, 884 P.2d 910, 918 (Wash. 1994) (where the ordinance required the landowner to show he or she could not make any reasonable use of a small lot without a variance, but the record demonstrated that the land had potential recreational uses, the variance request was denied). *But cf., Currey v. Kimple*, 577 S.W.2d 508,

¶ 34. We turn to consider the record before the Board. The State contends that the record is inadequate in several respects to support a conclusion that Huntoon would have no reasonable use of her property without the variance, and we agree.

## III.

¶ 34. The Board granted Huntoon's petition for four reasons. First, the Board considered that other structures on Hooker Lake have shorter setbacks, and thus it would be unduly burdensome to deny Huntoon something that other property owners enjoy. Second, the Board assumed that Huntoon would suffer a loss of value if her variance request was denied. Third, the Board determined that Huntoon's property had a unique limitation because of the steep slope from her house to the lake shore. Fourth, the Board concluded that the public interest is served when citizens are permitted a reasonable use of their property that is not harmful to the public.

¶ 35. Reviewing courts accord a decision of a board of adjustment a presumption of correctness and validity. *See Snyder*, 74 Wis. 2d at 476; *Arndorfer*, 162 Wis. 2d at 253. A reviewing court may not substitute its discretion for that committed to the Board by the legislature. *See Arndorfer* at 253. However, when a Board of Adjustment acts on an application for a variance, it acts in a quasi-judicial capacity. *See Schalow v.*

513 (Tex. App. 1978, writ ref'd n.r.e.) (fact that property owner had reasonable use of property as a residence under existing ordinance did not require denial of variance for purpose of constructing a tennis court on irregularly shaped lot because owners were entitled to use their property to its fullest as a family dwelling and place for family recreation).

*Waupaca County*, 139 Wis. 2d 284, 289, 407 N.W.2d 316 (Ct. App. 1987), citing 3 Rathkopf, *The Law of Zoning and Planning*, § 37.02(6), p. 37–35 (1987). The Board's action must be based upon evidence. *See id.* On certiorari review, a reviewing court applies the substantial evidence test to ascertain whether the evidence before the Board was sufficient. *See Clark v. Waupaca County Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994). If any reasonable view of the evidence would sustain the findings of the Board, the findings are conclusive. *See id.* However, a board may not find the existence of the elements of hardship, uniqueness, a necessity to preserve the comprehensive plan of zoning, and substantial justice "merely because no persons appeared to object to the grant [of the variance] or because objectors neither presented evidence showing that the converse of the claims [of the] applicant is true nor refuted the evidence of the applicant." 3 Ziegler, *Rathkopf's The Law of Zoning and Planning,* § 37.06, p. 37–82 (4th ed. 1993).

¶ 36. The State first argues that the Board should not have based its grant of a variance in part on the fact that many other lakefront property owners enjoy a much closer setback than the 64-foot setback requested by Huntoon.[12] Evidence of such "neighborhood character," according to the State, is not part of the statutory or ordinance test, nor is it part of the area variance analysis set out in case law. Area variances control restrictions on chiefly dimensional elements,

[12] The court of appeals agreed only that evidence of short setbacks for other structures, because it is evidence of the "character of the neighborhood," was relevant to determining whether the test of "no feasible use" or "unnecessarily burdensome" applied. *Kenosha County*, 212 Wis. 2d at 319–20.

such as setback, frontage, height, bulk or density, and area. *See Snyder* 74 Wis. 2d at 475; *see also, Ozaukee County*, 152 Wis. 2d at 560.

¶ 37.  The statute authorizes boards to consider a property owner's appeal for a variance "in specific cases." Section 59.99(7)(c), Wis. Stats. In *Arndorfer*, we cautioned against the "piecemeal" granting of exceptions to zoning regulations. 162 Wis. 2d at 255. The fact that Huntoon's home and deck may be visually compatible with the character of other homes on Hooker Lake is not a factor for the Board to use in determining, in this specific case, whether Huntoon has a reasonable use of her property without the deck.

¶ 38.  Even if the Board could look beyond Huntoon's property in deciding whether to grant the variance, there is nothing in the transcripts of either Board hearing upon which the Board could reasonably rely that other property owners actually have shorter setbacks, or the reasons why they have them if they do. Testimony that is little more than guessing about setback measurements is insufficient to constitute evidence upon which a board of adjustment could reasonably rely.[13] While a board hearing is not an adversarial proceeding with formal rules of evidence, *see Arndorfer*, 162 Wis. 2d at 254, permitting a variance based on "eyeballing" yardage in neighboring

---

[13] Neither Huntoon nor Cayo offered any evidence of setback variances granted to other Hooker Lake property owners. No evidence was offered of measurements of specific instances of shorter setbacks. As the court of appeals points out, the record does not disclose whether the perceived shorter setbacks on other properties are legal nonconforming uses, legal uses for which variances have been granted, or outright violations of the setback ordinance. *See Kenosha County*, 212 Wis. 2d at 320 n.5.

parcels would lead to piecemeal, if not wholesale, exceptions to shoreland zoning ordinances.

¶ 39. The Board's second reason for granting the variance was that Huntoon would suffer a loss of value if her variance request was denied. Similarly, the State contends that the Board's finding that a variance would allow Huntoon to better enjoy a view of the lake is based on personal convenience, and not unnecessary hardship. *See, e.g., Ozaukee County*, 152 Wis. 2d at 563 (holding that deprivation of a spectacular view of the river is not recognized in Wisconsin law as a hardship, but is a condition personal to the owner).

¶ 40. The Board also reached its conclusion on loss of value without substantial evidence. Indeed, neither Huntoon or Cayo ever raised this issue. The Board chair herself raised it, admitting "[a] real estate appraisal probably could give us a value loss of a house with a deck, without a deck if that's you know, but we haven't done that . . ." The Board found that Huntoon "has not had a real estate appraiser give a value loss should a deck be denied, but it is the Board's belief that there would be a loss of value if setback relief is denied." Not only was there no evidence presented to the Board about this perceived loss of value, but the Kenosha ordinance specifically prohibits granting variances where the primary reason is one of more profitable use of the property, or other economic reasons. *See* Kenosha Shoreland Zoning Ordinance 12.36–13(b).

¶ 41. The State characterizes the potential for additional value as simply another aspect of "personal inconvenience," a factor rejected by this court in *Snyder* as a basis for granting a variance. Similarly, this court in *Winnebago* held that maximizing economic

value of the property is not a proper test for determining unnecessary hardship. *See* 196 Wis. 2d at 844–45.

¶ 42.   That the Board here injected factual issues, and then made factual findings based on those issues it raised, is reminiscent of board conduct criticized in *Ozaukee County*, 152 Wis. 2d 552. In that case, as described by the court of appeals, "the board appeared singularly unconcerned with holding [the applicant] to his burden of proof." *Id.* at 558. Members of the board made statements in favor of a use variance permitting the proposed riverside development, and stated that the applicant's plans were "probably the best possible use of that piece of property." *Id.* The court of appeals held that standing alone, the purpose of economic gain is an insufficient basis for granting a variance. *See id.* at 563. While loss of economic value is not the sole reason why the Board granted the variance in this case, Huntoon's projected loss of value cannot be bootstrapped to a deck that is merely a personal convenience, and form a sufficient basis for a variance.

¶ 43.   The third reason the Board identified was that Huntoon's property bore a unique limitation by virtue of the steep slope from the house to the lake shore. The Board considered this feature a hardship because, in the Board's view, the slope presented a safety hazard. As with the economic concern discussed above, Huntoon herself offered no testimony on any safety hazard presented by her property in the absence of a variance. Her representative Cayo mentioned the age of the stoop that had been built in front of the lake side door to the house, but it was a Board member who characterized the slope as a safety concern. The record demonstrates that the house on Huntoon's property had been used for residential purposes for over 60 years. Huntoon has not claimed that the property could

not continue to be used safely as a residence if the variance were denied.

Consideration of safety, when the applicant has offered no testimony on that aspect, ignores the fact that the applicant has the burden of proof of all the essential elements of his or her right to relief. *See Arndorfer*, 162 Wis. 2d at 254.[14] We conclude that the Board lacked substantial evidence to make the finding that the hardship related to a unique condition of a dangerous slope.

¶ 44. The Board may have also made a finding of uniqueness limitations because of the combination of the steep slope, which begins at the door facing the lake, and the estimated 15 feet of shoreline that has been lost since 1936 due to erosion. This combination of factors does not rise to the level of uniqueness to form an unnecessary hardship. As the court of appeals recently stated, "where the hardship imposed on the applicant's land is shared by nearby land, relief should be addressed through legislative, rather than administrative means." *Winnebago*, 196 Wis. 2d at 846, quoting *Arndorfer*. The Board itself noted that Huntoon's complaint about loss of shoreline due to erosion was likely a condition shared by other Hooker Lake property owners. In any event, no evidence was offered to demonstrate that the erosion, even in combination with the slope, formed a unique condition, one which prevents Huntoon from enjoying a reasonable use of her property.

---

[14] In *Arndorfer* we recognized that a hearing before a board of adjustment is not necessarily an adverse proceeding, *see* 162 Wis. 2d at 254, citing McQuillin, *Municipal Corporations*, § 25.167 at 337 (3d ed. 1983), but we did not waver from the requirement that *the applicant* must comply with the burden of proof required by the statute and the ordinance. *See id.*

¶ 45. As a final basis for its decision to grant the variance, the Board reasoned that the public interest is served when citizens are allowed a reasonable use of their property that does not cause harm to the public. This statement overlooks the fact that Huntoon has a reasonable use of the property without the variance. The record demonstrates that the house has been used as a residence since it was first built. Further, the Board's final reason appears to approve of *any of a number of reasonable uses*, so long as it does not cause harm to the public. The Board's statement is too accommodating.

¶ 46. Charged with protecting the public interest, the legislature has determined that variance requests will be considered in light of the purposes of the shoreland protection statutes. *See Snyder*, 74 Wis. 2d at 473. Both the statutes and the ordinance in this case call for a uniform 75-foot setback from the ordinary high-water mark of navigable waters in unincorporated areas. One of the purposes of zoning laws is that variances should be granted sparingly. *See* 3 *Rathkopf's*, § 37.06 at 37–81. Only when the applicant has demonstrated that he or she will have no reasonable use of the property, in the absence of a variance, is an unnecessary hardship present.

¶ 47. Based on the foregoing, we conclude that the Board did not properly apply the legal standard for unnecessary hardship when it granted Huntoon a variance to build a deck extending into the shoreyard of Hooker Lake. Further, the Board lacked substantial evidence on which to base its conclusion of unnecessary hardship. We therefore reverse the decision of the court of appeals, and remand to the circuit court for remand

and rehearing by the Board of Adjustment consistent with the legal standard as described in this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.