Dorothy Drake, Plaintiff-Appellant,
v.
Burnett County Board of Adjustment, Defendant-Respondent.
No. 2005AP2285.
Court of Appeals of Wisconsin, District III.
May 31, 2006.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 HOOVER, P.J.
Dorothy Drake appeals a judgment affirming the Burnett County Board of Adjustment's decision to deny her variance application. Drake asserts the Board erred: when it failed to acknowledge her deck as a pre-existing, nonconforming structure; by applying the wrong theory of law; and by failing to consider the impact of erosion. Because the Board's factual determinations are adequately supported by the record and the Board applied the correct legal standards, we affirm the judgment.

Background
¶2 Drake owns a home with a wooden deck on North Sand Lake in the Town of Jackson. The home was built in the 1950s or 1960s and undisputedly predates the state statute on shoreland zoning enacted in the late 1960s, as well as the corresponding county zoning ordinance enacted around 1971. Accordingly, the original deck, which evidently intruded upon the seventy-five-foot setback prescribed by law, was a nonconforming structure.
¶3 Drake had the deck "redone" over time, piece by piece as finances permitted. In October 2003, the zoning administrator notified Drake that the deck encroached upon the seventy-five-foot setback and thus was in violation of the applicable zoning laws. In response, Drake filed for a variance in December.
¶4 The Board held a public hearing on Drake's application in May 2004. Drake's son, Larry, presented the family's argument. He explained the deck used to be much closer to the lake and that the deck was not visible from the water. He also argued that, when it had been completed, the deck met the setback requirement but suggested that because erosion had moved the location of the ordinary high water mark, the erosion caused the deck to be noncompliant. The Board ultimately denied Drake's application, concluding compliance with the zoning requirements would not impose an unnecessary hardship on Drake.
¶5 Drake petitioned the circuit court for certiorari review, arguing the Board had erred by not recognizing the deck as a nonconforming structure. Drake also argued she had established hardshipnamely, erosionand that the decision was arbitrary and capricious and based on an incorrect theory of the law. The court concluded the Board committed no error and affirmed its determination.

Discussion
¶6 Because this case is before us on certiorari, our review is limited to whether: (1) the Board acted within its jurisdiction; (2) it proceeded on the correct theory of law; (3) itsaction was arbitrary, oppressive or unreasonable and represented its will, not its judgment; and (4) the evidence was such that the Board might reasonably make the determination in question. Snyder v. Waukesha County Bd. of Adj., 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976). Whether to issue a variance is committed to the Board's discretion. Id. at 475-76. An area variance should be granted upon a showing of unnecessary hardship. State ex rel. Ziervogel v. Washington County Bd. of Adj., 2004 WI 23, ¶7, 269 Wis. 2d 549, 676 N.W.2d 401. We hesitate to interfere with administrative determinations and afford the Board a presumption of correctness and validity. Snyder, 74 Wis. 2d at 476.
¶7 Drake's first argument is that the Board erred by failing to make a preliminary finding on whether her deck was nonconforming. She asserts such a determination should be the first step in the Board's analysis and that the Board erroneously believed the original deck need not be considered. In other words, Drake asserts the deck, as currently standing, was created by permissible expansion and improvement of the original nonconforming deck.
¶8 Continuation of and routine maintenance on nonconforming structures may not be prohibited by counties. However, counties may limit expansion, alteration, or repair of nonconforming structures. WIS. ADMIN. CODE § NR 115.05(3)(e). This is so that nonconforming structures do not continue in perpetuity, but are gradually phased out. Burnett County's ordinances permit only ordinary "maintenance and repair" on nonconforming structures between forty and seventy-five feet from the high water mark.[1] BURNETT CO., WIS., ORDINANCES § 4.4(9)(b). Thus, if Drake's current deck is the result of maintenance and repair, it would simply be continuation of the original structure. If the deck is new construction, she was required to obtain a variance.
¶9 Drake points to the following statement to demonstrate that the Board made no such consideration of the nature of her deck:
[W]e can't look at what's there because that's a hardship that was created. We have to look at this like it's coming to us new. That's how we have to view this. We can't encourage intentional nonconforming behavior by granting variances after the fact. That's against what boards of adjustment are supposed to do. I think we need to look at this, would we grant this if it wasn't there.
¶10 This statement by one of the members simply reveals an opinion that the Board should not consider the deck's mere existence in the unnecessary hardship determination. Indeed, the member later remarked, "if they replaced an existing deck, I would look at that differently." Thus, the Board was aware that the original deck was relevant to determining whether the current deck was merely based on repairs or was new construction. What Drake really challenges is the Board's determination that it was "looking [at] something different than just replacing an existing deck that was there, even though nonconforming ...."
¶11 The record, however, is replete with evidence supporting the Board's decision. The Board had records with notations indicating that, in 2003, Larry informed the county the Drakes had installed a new deck. Another of Drake's sons, Mike, also informed the county of a new deck installed in 2003 where there used to be a landing. There was testimony that while 550 square feet were removed from encroachment on the setback, the deck was one-third "bigger," suggesting an increase in vertical height or expansion away from the setback.
¶12 The Board reviewed photographs revealing marked differences between the style, appearance, and components of the two decks. These photographs reveal a large railing on the "new" deck that did not appear in photos of the original, and the platform of the deck appears more elevated from the ground than the original. At least one Board member perceived the decks to be in slightly different locations. These facts all undercut an assertion that Drake performed mere maintenance and repair on the deck.
¶13 Drake never challenges the validity of the Board's interpretations of the evidence or demonstrates they are erroneous. To be sure, there are facts in the record that could support a finding the deck was not new construction. But we will not reject one factual determination adequately supported by the record simply because an opposite determination is also supported. See Sills v. Walworth County Land Mgmt. Comm., 2002 WI App 111, ¶11, 254 Wis. 2d 538, 648 N.W.2d 878.
¶14 Drake next argues the Board applied the wrong theory of law by applying the rejected "no reasonable use" test from State v. Kenosha County Bd. of Adj., 218 Wis. 2d 396, 577 N.W.2d 813 (1998), rather than the less stringent "unnecessary hardship" standard established by Snyder and readopted in Ziervogel, 269 Wis. 2d 549, ¶¶6-7.
¶15 As noted, applicants for an area variance must demonstrate an unnecessary hardship:
[T]he question of whether unnecessary hardship ... exists is best explained as whether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.
Id., ¶7 (internal quotations and citations omitted). The determination "depends upon a consideration of the purpose of the zoning restriction in question, its effect on the property, and the effect of a variance on the neighborhood and larger public interest." Id., ¶33. The hardship must be unique to the property and cannot be self-created. Id. The burden of proving unnecessary hardship is on the property owner. Id.
¶16 Drake contends there is no evidence the Board applied Ziervogel; however, her argument ignores the uniqueness requirement and the mandate that the hardship cannot be self-created. Id. Viewing the record as a whole, we conclude the Board applied the proper standard.
¶17 The Board acknowledged the deck could not be seen from the lake and, accordingly, the membership informally agreed that this would not be detrimental to the larger public interest. However, it is clear the Board had difficulty accepting that the hardship was not self-created. One member opined the hardship was only that the deck was already built, then further suggested the deck could have been smaller and still enjoyable. One member did not consider the property to have unique features and stated there was other space for the deck without building into the setback. Another member stated that had Drake applied for a building permit, the setback would have been staked out and Drake could have avoided encroachment altogether.
¶18 Moreover, the language of the Board's order explicitly tracks Ziervogel's requirements. It addresses whether literal enforcement of the ordinance would unreasonably prevent a permitted use, whether the hardship is related to the property or created by the owner, and whether the public interest will be harmed. The Board applied the correct standard of law.
¶19 Finally, to the extent Drake insists the Board should have considered erosion because it "created complications with her ability to comply with the 75-foot set-back," this argument is underdeveloped.[2] As the trial court noted, Drake "has failed to establish a nexus between the erosion occurring and the unnecessary hardship her compliance would cause." Rather, she simply asserts that erosion has changed the ordinary high water mark, moving the setback closer to the deck and the house, without citing any evidence of record establishing where the setback used to be. She fails to explain how enforcing the setback would prevent her from "using the property for a permitted purpose." As the Board noted, she could build the deck elsewhere or in a different direction than toward the lake. She also does not show that erosion is a hardship unique to her lot. She likely cannot make this showing, having asked a neighbor to testify to the Board about lakewide erosion concerns.
By the Court.  Judgment affirmed.
NOTES
[1] Drake's deck, at its most-encroaching point, is sixty-seven feet from the ordinary high water mark, or eight feet into the setback.
[2] This argument also potentially undermines the nonconformity argument. Drake argues the original deck was nonconforming because it used to be four feet closer to the lake than it is now. That would put the deck twelve feet into the current setback. But Drake also argues the current setback has been moved closer to the house by ten to twenty feet because that much shoreline eroded from 1999-2004. If true, then without accounting for any other changes, this would mean that, in 1971 when the county ordinance was enacted and prior to the erosion, the deck encroached by as little as two feet, or it was out of the setback by up to eight feet. If the deck was not located in the setback in 1971, the deck was conforming at the time and no argument can be made that the current deck was merely the result of maintenance and repair to an original nonconforming structure.