COUNTY OF SAWYER ZONING BOARD, Petitioner-Respondent,

v.

STATE OF WISCONSIN-DEPARTMENT OF WORKFORCE DEVELOPMENT, Respondent-Appellant.

Court of Appeals

*No. 99–0707. Submitted on briefs September 20, 1999.—Decided November 23, 1999.*

(Also reported in 605 N.W.2d 627.)

534

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *David C. Rice,* assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Michael F. Durst* of *Maki, Durst, Ledin, Bick, Lehr & Kanuit, S.C.,* of Superior.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. The issue on appeal is whether the Department of Workforce Development, in enforcing the Wisconsin Fair Housing Act (WFHA), may order a zoning board to issue a shoreland zoning variance based upon characteristics unique to the landowner. The department appeals a circuit court order reversing its decision. The department in essence requests that we modify the unnecessary hardship standard required to obtain a shoreland zoning variance, and examine the personal characteristics of a property owner when the owner suffers from a disability. Such a modification would require overruling

supreme court decisions, which we may not do. The proper standard for granting a shoreland setback zoning variance is whether the property owner has no feasible use of the property without the variance, taking into account only the peculiar characteristics of the land. *See State v. Kenosha County Bd. of Adj.*, 218 Wis. 2d 396, 413–14, 577 N.W.2d 813, 821–22 (1998). The property owner failed to prove that there was no feasible use absent the variance. The board therefore did not discriminate, but merely applied the correct legal standard when it refused to grant the variance. Accordingly, the circuit court's order is affirmed.

## BACKGROUND

¶ 2.  Gregory Klint owns a cabin abutting Grindstone Creek as it flows into Lac Courte Oreilles in Sawyer County. He and his family use the cabin on summer weekends. Klint suffers from Marfan's Syndrome. He has congestive heart failure, pulmonary hypertension and restrictive lung disease, which necessitates the use of a room air concentrator or oxygen.[1] A fifty-foot-long hose connects him to his oxygen supply at the cottage. The parties stipulated that he is disabled for purposes of the WFHA. *See* § 106.04(1m)(g), STATS.

¶ 3.  In 1993, Klint hired a contractor to build a 20' x 22' addition to the cabin.[2] The addition permits Klint a greater view of the creek and lake and the sandbar area where his children play. Its linear design permits him to keep his air hose out of the traffic pattern and move about without the hose getting tangled.

---

[1] A room air concentrator concentrates the oxygen content of room air.

[2] The square footage of the addition exceeded the square footage of the existing cabin.

¶ 4.   The addition was placed on the lake side of the cabin, and a triangular portion of it infringes upon the forty-foot average setback from the high water mark of the creek mandated by Sawyer County's shoreland zoning ordinance. After the construction was complete, the Sawyer County Zoning administrator issued Klint two citations, one for building without a permit[3] and the other for violating the minimum setback.

¶ 5.   Klint applied to the board for an after-the-fact variance. The board rejected the variance request on the grounds that it would be for the convenience of the owner and "would not be due to special conditions unique to the property." The board ordered Klint to remove eight feet from his addition so that it would meet the forty-foot average setback from the creek. This would apparently entail removing a triangular portion of the addition's corner nearest the creek.

¶ 6.   In September 1994, Klint filed a disability discrimination complaint against the board under the WFHA, alleging that the board discriminated against him, in violation of § 106.04(2r)(b)3 and 4, STATS.[4] In

---

[3] The contractor was to obtain all of the necessary permits, but failed to do so.

[4] Section 106.04(2r)(b)3 and 4, STATS., provides in part:

Types of discrimination prohibited. In addition to discrimination prohibited under subs. (2) and (2m), no person may do any of the following:

. . . .

3.  Refuse to permit, at the expense of a person with a disability, reasonable modifications of existing housing that is occupied, or is to be occupied, by such a person if the modifications may be necessary to afford the person full enjoyment of the housing . . . .

4.  Refuse to make reasonable accommodations in rules, policies, practices or services that are associated with the housing, when such accommodations may be necessary to afford the person equal opportunity to use and enjoy housing, unless the accommo-

particular, he claimed that the board refused to permit him to make reasonable modifications to the cottage or make a reasonable accommodation under the zoning ordinance for his cottage. The matter was tried to an administrative law judge, who concluded that the County had violated the WFHA by refusing to grant a variance. The ALJ ordered the board to grant Klint a variance, dismiss the setback citation against Klint, pay a forfeiture and pay Klint's attorney fees. The board sought certiorari review before the Sawyer County Circuit Court. The circuit court reversed the department's decision, and the department brought this appeal.

## STANDARD OF REVIEW

¶ 7. On appeal, we review the department's, rather than the circuit court's, decision. *See Stafford Trucking v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). The department's factual findings must be upheld if there is credible and substantial evidence in the record upon which reasonable persons could rely to make the same findings. *See* § 227.57, STATS.; *see also Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173–74 (1983). Once the facts are established, however, the application of those facts to the statute or legal standard is a question of law. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

¶ 8. Choosing the appropriate legal standard to apply is a question of law, one we usually review de novo. *See State v. Keith*, 216 Wis. 2d 61, 69, 573 N.W.2d 888, 892 (Ct. App. 1997). We will, however, defer to an

dation would impose an undue hardship on the owner of the housing.

agency's legal determinations under certain circumstances, depending on the level of expertise the agency has acquired in the area. *See Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 760–64, 569 N.W.2d 726, 731–32 (Ct. App. 1997). Our supreme court has identified three distinct levels of deference granted to agency decisions: great weight deference, due weight deference and de novo review. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). Which level is appropriate "depends on the comparative institutional capabilities and qualifications of the court and the administrative agency." *Id.* (quoted source omitted). A de novo standard of review is only applicable when the issue before the agency is clearly one of first impression. *Id.* at 285, 548 N.W.2d at 62.

¶ 9. We conclude that this is an issue of first impression and requires interpreting a statutory and regulatory scheme entirely independent from the WFHA. The department has no experience in administering or interpreting shoreland zoning ordinances. The legislature delegated that responsibility to the counties and the Department of Natural Resources. *See* §§ 59.692 and 281.31, STATS. (governing zoning of shorelands on navigable waters and navigable waters protection). We therefore afford the department's decision no deference.

## ANALYSIS

¶ 10. The department contends that the board is subject to the WFHA when enforcing its zoning ordinances. Initially, the department asserts that the "reasonable accommodation requirement of the WFHA can be read harmoniously with the literal language of Wis. Stat. § 59.694(7)(c), since a person with a disability may present 'special conditions' which result in an

'unnecessary hardship' if a variance is not granted." We reject this argument because, as the department concedes, our supreme court has consistently interpreted the terms "special conditions" and "unnecessary hardship" in § 59.694(7)(c), STATS., to apply to the conditions especially affecting the lot in question and not to conditions personal to the landowner.

¶ 11.   Section 59.692, STATS., requires counties to adopt shoreland zoning ordinances to effect the purposes of § 281.31, STATS., and to promote the public health, safety and general welfare. A county's shoreland zoning ordinance must meet reasonable minimum standards or the DNR may adopt an ordinance for the county. *See* § 59.692(6), STATS.; WIS. ADM. CODE § NR 115.01.

¶ 12.   Section 59.694(7)(c), STATS., empowers the board to

> authorize . . . in specific cases variances from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

Beginning with *Snyder v. Waukesha County Zoning Bd. of Adj.*, 74 Wis. 2d 468, 479, 247 N.W.2d 98, 104 (1976), our supreme court stated:

> Practical difficulties or unnecessary hardship do not include conditions personal to the owner of the land, but rather to the conditions especially affecting the lot in question. "[I]t is not the uniqueness of the plight of the owner, but uniqueness of the land causing the plight, which is the criterion." (Quoted source omitted.)

Most recently, in *Kenosha County*, 218 Wis. 2d at 413–14, 577 N.W.2d at 821–22, the supreme court said:

> We agree that the State's definition of unnecessary hardship—no reasonable use of the property without a variance—is compatible with the concerns we expressed in *Snyder*. This articulation is also consistent with the recent decision in *Winnebago County* . . . where the court of appeals held that the proper test is not whether a variance would maximize the economic value of the property, but whether a feasible use is possible without the variance.
>
> This definition also clarifies that in *Snyder* we did not mean that a variance could be granted when strict compliance would prevent the property owner from undertaking *any of a number of* permitted purposes. Rather, when the record before the Board demonstrates that the property owner would have a reasonable use of his or her property without the variance, the purpose of the statute takes precedence and the variance request should be denied. (Emphasis in original.)

¶ 13.   The department next urges us to modify the supreme court's consistent holdings by interpreting them "slightly more expansively . . . to encompass persons with a 'disability' who require a variance as a 'reasonable accommodation' " within the unnecessary hardship definition. We reject this invitation for the same reason; our supreme court has proscribed examination of personal characteristics of the owner when considering granting a variance to a shoreland zoning ordinance. *See id.*

¶ 14.   Both of the department's contentions that "special conditions" and "unnecessary hardship" can be construed to consider a disabled person's unique characteristics suffer from the same infirmity. They would

require us to overrule or modify case law decided by our supreme court. This we may not do. "The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246, 256 (1997). The department's first contention would have us ignore the cases that define the' terms "special conditions" and "unnecessary hardship." The latter argument would have us modify the supreme court's holdings to now consider what it has expressly prohibited zoning boards from considering: factors unique to the owner. *See Kenosha County*, 218 Wis. 2d at 413–14, 577 N.W.2d at 821–22.

¶ 15.  The board could consider only those factors delineated by § 59.694(7)(c), STATS., and existing case law. There is no dispute that Klint has feasible uses of the property absent a variance. The board could not grant the variance without acting in excess of its powers and contrary to state law.

¶ 16.  The department claims that if the WFHA or the law regarding variances cannot be harmonized as it suggests, then they are irreconcilable and the WFHA controls. To the contrary, we are satisfied that the supreme court's prohibition against considering characteristics personal to the landowner when granting a shoreland zoning variance controls the precise issue before us. In addition, the legislature's mandate that counties have shoreland zoning ordinances that conform to standards established by the DNR, *see* § 59.692(6), STATS., and the DNR's duty to appeal decisions that do not comply with shoreland zoning ordinances, *see State ex rel. DNR v. Walworth County Bd. of Adj.*, 170 Wis. 2d 406, 412, 489 N.W.2d 631, 633 (Ct. App. 1992), suggest a specific statutory scheme and the State's compelling interest in shoreland zon-

ing. Moreover, although the department directs us to some authority indicating the WFHA is to apply to zoning decisions, none of that authority specifically addresses zoning that is similar to shoreland zoning.[5]

[5] The department directs our attention to federal cases interpreting the federal Fair Housing Act Amendments. We do not decide the relevance of those cases to interpreting the WFHA, but note that even if relevant, the case law cited is distinguishable. They involved situations where the zoning ordinance would prevent use of an existing structure for disabled persons because the property was zoned to prevent the number of unrelated persons contemplated from dwelling together, or within a specified radius. *See Judy B. v. Borough of Tioga*, 889 F. Supp. 792 (M.D. Pa. 1995) (Injunction issued preventing enforcement of zoning ordinance to prevent the conversion of a motel into single room occupancy residence for disabled individuals); *Horizon House Dev. Services v. Township of Upper Southampton*, 804 F. Supp. 683 (E.D. Pa. 1992) (court enjoined township from enforcing ordinance imposing a distance requirement of 1,000 feet for group homes); *Oxford House v. Town of Babylon*, 819 F. Supp. 1179 (E.D.N.Y. 1993) (judgment granted to prevent eviction of residents of a home for recovering drug and alcohol addicts under ordinance prohibiting more than four unrelated persons from residing in the same dwelling); *Oxford House v. Township of Cherry Hill*, 799 F. Supp. 450 (D. N.J. 1992) (injunction granted preventing township from applying its zoning requirement limiting the number of unrelated persons residing in the same dwelling in a single family residential zone); *Stewart B. McKinney Found. v. Town Plan & Zoning Comm'n*, 790 F. Supp. 1197 (D. Conn. 1992) (injunction granted preventing town from requiring special exemption for the intended use of a two family residence as a rental home for HIV infected persons to more than the number of unrelated persons otherwise permitted).

The cases also addressed municipal actions that imposed special or specific requirements that hindered the protected classes from obtaining housing. Congress apparently intended

■
¶ 17. We conclude that the board's failure to grant the variance did not constitute discrimination,

to impose restrictions upon local zoning ordinances that placed special requirements upon zoning permits obtained by handicapped and other protected persons.

> These new subsections would also apply to state or local land use and health and safety laws, regulations, practices or decisions which discriminate against individuals with handicaps. While state and local governments have authority to protect safety and health, and to regulate the use of land, that authority has sometimes been used to restrict the ability of the individuals with handicaps to live in communities. This has been accomplished by such means as the enactment or imposition of health, safety or land use requirements on congregate living arrangements among nonrelated persons with disabilities. Since these requirements are not imposed on families in groups of similar size or of other unrelated people, these requirements have the effect of discriminating against persons with disabilities.

H.R. REP. NO. 711–100, at 24 (1988), *reprinted in* 1988 U.S.C. C.A.N. 2173, 2185.

We recognize that there is substantial case law that holds or opines that local zoning laws and municipal zoning decisions must make "reasonable accommodation" for handicapped persons. These cases, for the most part, fall into categories that impose special conditions upon persons who are handicapped. Such special conditions may not be established under the guise of heightened health and safety concerns for the handicapped. *See Horizon House*, 804 F. Supp. at 699; *see also Proviso Ass'n of Retarded Citizens v. Village of Westchester*, 914 F. Supp. 1555 (N.D. Ill. 1996). Claims of general community welfare may not be utilized to spread group living homes farther apart than other dwelling houses having comparable numbers of inhabitants. *See Horizon House*, 804 F. Supp. at 699. The cited cases merely recognize the classic type of discrimination.

In the present case, the relevant zoning ordinance and regulations make no distinction between handicapped persons and those who are not handicapped. The setback requirements do

but rather was the only legal action it could take given the proof before it. Because the board did not engage in a discriminatory act, the department was without authority to order the board to grant the variance and to dismiss the citation for violating the setback to allow attorney fees or to assess a forfeiture. *See* § 106.04(6)(h), STATS. We do not address the parties' remaining arguments because our decision on this issue is dispositive. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 599, 562 (Ct. App. 1983). Accordingly, we affirm the circuit court.

*By the Court.*—Order affirmed.

not single out Klint (or any other disabled person or classes of persons), nor do they impose special conditions or requirements different from those imposed on all others. Shoreland zoning ordinance setback requirements, as interpreted by the DNR and our supreme court, prohibit all persons, irrespective of whether disabled or not, from infringing on the setback. The department has not directed us to any cases that have addressed similar zoning requirements. The closest decision we could find was vacated because the case settled and did not support the department's position. *See Pulcinella v. Ridley Township*, 822 F. Supp. 204 (E.D. Pa. 1993).