WISCONSIN CORRECTIONAL SERVICE, and Wisconsin Correctional Foundation, Inc., non-profit corporations, Plaintiffs,

v.

CITY OF MILWAUKEE, a municipal corporation, Defendant.

No. 01–C–575.

United States District Court, E.D. Wisconsin.

Sept. 25, 2001.

Robert Theine Pledl, Kristin Posekany Fredrick, for Plaintiff or Petitioner.

Jan A. Smokowicz, Thomas O. Gartner for Defendant City of Milwaukee, Thomas L. Shriner, Jr., David W. Simon, Joseph D. Kearney for amicus Marquette University High School, for Defendant or Respondent.

## ORDER

STADTMUELLER, Chief Judge.

## BACKGROUND

Plaintiffs Wisconsin Correctional Service and Wisconsin Correctional Foundation, Inc. [collectively, "WCS"] have moved for partial summary judgment or a preliminary injunction, alleging that the Milwaukee Board of Zoning Appeals improperly denied it a special use permit to open a mental health clinic at 3716 West Wisconsin Avenue in Milwaukee, Wisconsin. WCS[1] contends that under the Americans with Disabilities Act of 1990 ["ADA"], 42 U.S.C. § 12101, et seq., and the Rehabilitation Act of 1973 ["Rehabilitation Act"], 29 U.S.C. § 794, it is entitled to such a special use permit as a reasonable modification of Milwaukee Code of Ordinances ["MCO"] § 295–59–5.5–c. It requests a permanent injunction directing the City of Milwaukee to issue WCS the desired special use permit or, in the event that its motion for partial summary judgment is denied, a

preliminary injunction providing it with much the same relief.

Informed that WCS had made a purchase offer for the property at 3716 West Wisconsin Avenue, but that the offer was contingent upon securing an injunction requiring the City to grant the organization a special use permit and that the offer was to expire in early September 2001, the court considered the case on an expedited basis. The court considered briefs and evidentiary materials supplied not only by the plaintiff and defendant, but by proposed amicus curiae Marquette University High School, which is located approximately three blocks from the proposed clinic.

The materials supplied by the parties disclose the following facts: WCS is a private, non-profit organization established in 1978 to provide services to persons with mental disabilities in Milwaukee County. At present, these services include medical treatment, psychiatric assessments, administration of medications, employment counseling, housing assistance, case management, and pharmacy services. Many of these services are provided at a 7,500 square foot outpatient mental health clinic located at 2023 West Wisconsin Avenue in the City of Milwaukee. As the name "Wisconsin Correctional Service" suggests, many of these individuals are referred by court-related agencies, including the U.S. Probation Department which is a component of this court. In fact, 235 WCS clients have had previous contact with the criminal justice system.

As recently as 1994—the last time WCS's physical space was increased— WCS served only 250 clients and had a staff of 19.8 full time equivalents. Today the organization has 35.8 full time equiva-

---

1. It appears that the Wisconsin Correctional Foundation exists solely to provide funding and management for the Wisconsin Correc-

tional Service. Accordingly, the court will refer to the collective WCS as one entity.

lent employees and 385 clients. Faced with a space squeeze that has compromised the comfort and privacy of everyone involved, WCS began a search for larger quarters in 1998.

During the next three years, WCS identified ten properties that could potentially serve its (and its clients') needs. Upon further investigation, only two properties met WCS's stated criteria of a central location, adequate size, access to public transportation, a safe neighborhood, a serviceable floor plan requiring minimal remodeling costs, and adequate parking. Unfortunately, neither property was located in a neighborhood specifically zoned for mental health clinics. Both were in areas where mental health clinics are permitted "special uses," but ones that require a public hearing and issuance of a special use permit from the Milwaukee Board of Zoning Appeals ["BOZA"].

Cognizant of the fact it would need to obtain a special use permit, WCS made a contingent offer on one of the properties. That is, it offered to purchase an option on the property that it would exercise if and when it obtained the required special use permit. The seller refused to accept the contingent offer. Faced with that defeat, WCS made a similar offer on the second property—the 20,000 square foot property at issue here. The seller accepted.

On October 20, 2000, WCS applied to the City of Milwaukee for a special use permit to occupy the premises at 3716 West Wisconsin Avenue. That request was referred to the Milwaukee BOZA on December 1, 2000. BOZA scheduled a public hearing for March 22, 2001.

Typically, the BOZA considers four criteria when deciding whether to issue a special use permit. These criteria are (1) Protection of Public Health: The use will be designed, located and operated in a manner so that the public health, safety and welfare is protected; (2) Protection of Property: The use, value and enjoyment of other property in the neighborhood will not be substantially impaired or diminished by the establishment, maintenance or operation of the special use; (3) Traffic and Pedestrian Safety: Adequate measures have been or will be taken to provide safe pedestrian and vehicular access; and (4) Consistency with Comprehensive Plan: The use will be designed, located and operated in a manner consistent with the City's comprehensive plan. *See* Milwaukee Code of Ordinances ["MCO"] § 295–59–5.5. The Department of City Development submitted a Special Use Report to BOZA recommending that WCS's request for the proposed use be denied because it did not meet the four standard criteria. The only criterium the report concluded was not satisfied, however, was number (2): The Department of City Development determined that "the petitioner has not satisfactorily demonstrated that the use, value and enjoyment of other property in the neighborhood will not be substantially impaired or diminished by the establishment, maintenance or operation of the special use." The Report did not provide any specific reason(s) for this conclusion.

Prior to the March 22 hearing, WCS submitted materials to the BOZA arguing that the proposed use would satisfy all four standard criteria. In addition, WCS notified the BOZA that it intended to invoke its clients' rights under the Americans with Disabilities Act and the Rehabilitation Act and that under such acts, the City is required to make "reasonable modifications" to its policies (such as those used in interpreting the four criteria) so as to ensure that individuals with mental disabilities have the same opportunity to secure clinic space as individuals without recognized disabilities. WCS's counsel, Robert Pledl, reiterated this argument at the

hearing. He therefore requested the opportunity to present evidence that issuance of a special use permit would be a reasonable accommodation of his clients' disabilities mandated by the ADA and the Rehabilitation Act.

Faced with Mr. Pledl's request, BOZA Chairman Craig Zetley asked Assistant City Attorney Harry Stein for his opinion. Mr. Stein opined that the BOZA did not have "jurisdiction" to consider evidence presented pursuant to the ADA or the Rehabilitation Act. Mr. Zetley concurred, and prohibited WCS (or anyone else) from presenting any evidence on the issue.

At the hearing, then, Mr. Pledl was able only to present a limited amount of evidence. This evidence included testimony from John Maher, a member of the Board of Avenues West Safety and Security Task Force, who informed the BOZA that he had investigated the issue of WCS's safety record, and that he could find no evidence that WCS clients were responsible for safety problems in the area surrounding WCS's current clinic. In addition, a neighbor of the 2023 West Wisconsin Avenue site testified that WCS did not create any problems in her community. Letters to the same effect from numerous businesses in the current neighborhood were submitted as evidence. Finally, evidence was presented that the National Institute of Justice presented WCS with an award for exemplary care of previously-institutionalized individuals with mental health needs.

As could be expected, opponents of the clinic presented evidence, as well. Most of this evidence came in the form of testimony from neighbors expressing concern that so many ex-offenders might be bussed to their neighborhood. One prominent opponent, Marquette University High School, sent a representative to voice the school's concern that ex-offenders would be riding public transit alongside its students. Significantly, no empirical evidence was presented at all that WCS's clients have posed security risks to their current neighborhood, however, or that they are likely to do so in the proposed neighborhood. The only evidence that might be construed to implicate such a concern was a report showing that the area around 2023 West Wisconsin Avenue (WCS's current location) suffers an unusually high crime rate. This evidence also showed that the crime rate had been falling in recent years, however. Moreover, the evidence did not indicate which, if any, of the crimes in that area were committed by WCS clients.

Apparently swayed by the fears of residents near the proposed new location,[2] on May 3, 2001, members of the BOZA voted 4–0 to deny the requested special use permit. A written decision dated May 9, 2001, did not explain the BOZA's reasons for denying the permit.

On June 7, 2001, WCS filed suit in this court, alleging that the BOZA violated the Americans with Disabilities Act and the Rehabilitation Act by failing to modify its policies reasonably when evaluating the criteria for issuance of a special use permit. The plaintiff further argues that issuance of such a permit is a "reasonable accommodation" of the needs of its disabled clients and that it is entitled to a permit as a matter of law.

Responding to the complaint, the City of Milwaukee argues that the BOZA was not required to consider the plaintiff's contentions under the ADA or the Rehabilitation Act and that the plaintiff is not entitled to relief under those acts. The City then

---

2. Of those who registered their opinions with the BOZA, 89 opposed issuance of a special use permit; 39 supported it.

argues that even if the plaintiff's contentions are entitled to consideration under the ADA and the Rehabilitation Act, that issuance of a special use permit is not required under those acts. This is especially so, the defendant argues, in light of evidence turned up in discovery.

The evidence. to which the defendant refers reveals that in the first six months of the year 2000, two arrests were made at WCS's current site. The evidence does not show, however, whether the individuals arrested were WCS clients. The City's evidence also shows that police were summoned to the WCS facilities ten other times during the first six months of 2000. Significantly, however, those calls did not result in arrests. In fact, several calls were for police assistance of clients who had been victimized themselves or assistance with clients who needed to be hospitalized. The evidence presented to this court indicates only one WCS client who was actually arrested at the clinic in the previous 18 months. That individual was cited for disorderly conduct related to drinking.

After carefully considering all the submissions (including those from the proposed *amicus*), the court held a hearing in open court on August 29, 2001. During that hearing the court announced that on the current state of the record, it would be unable to grant the plaintiff's motions for partial summary judgment or a preliminary injunction. The court determined, as explained more fully below, that the ADA and the Rehabilitation Act *do* apply to the plaintiff's claims, but that due to the unfortunate decision of the BOZA Chair, upon the city attorney's advice, not to collect the sort of evidence on which federal courts base ADA and Rehabilitation Act decisions, the court is simply without the benefit of a complete record on which to issue a reasoned decision. Thus, the court deter-

mined it appropriate to remand the case to the BOZA for further consideration not inconsistent with this written decision.

## DISCUSSION

WCS claims that under the Americans with Disabilities Act and the Rehabilitation Act that it is entitled to a reasonable modification of Milwaukee Code of Ordinances § 295–59–5.5–c (the four standard special use criteria discussed above) as a "reasonable accommodation" of governmental policies as applied to disabled individuals. It asserts that if it were to have received such a reasonable modification as required by law, today it would be in possession of the special use permit it requested from the Milwaukee Board of Zoning Appeals. It requests a permanent or preliminary injunction directing Milwaukee to issue the desired special use permit and to stop interfering with WCS's plans to establish a mental health clinic at 3716 West Wisconsin Avenue.

WCS's argument that it is entitled to a reasonable modification of established policies under the ADA and the Rehabilitation Act is a meritorious one. Finding that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, ... failure to make modifications to existing facilities and practices, ... [and] segregation ...". 42 U.S.C. §§ 12101(a)(2), (3), (5), Congress enacted the Americans with Disabilities Act in 1990 to, among other things, prevent "qualified individuals with disabilities" from being excluded from the benefits of the services, programs or activities of a public entity, or from being subjected to discrimination by that entity by reason of the individuals' disabilities. *See* 42 U.S.C. § 12132.

A "qualified individual with a disability" protected by the ADA is "an individual with a disability who, with or without reasonable modifications to rules, policies, or

practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

■ Title II of the ADA (the title relevant to this lawsuit) is modeled on Section 504 of the Rehabilitation Act. *See Washington v. Indiana High School Athletic Ass'n,* 181 F.3d 840, 845 (7th Cir.1999)(citing *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116, 123 (7th Cir.1997). The elements of claims under the two provisions are essentially identical[3] and precedent under one statute typically applies to the other. *See id.* The chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding, while Title II of the ADA contains no such limitation. *See id.* Another difference is that the Rehabilitation Act requires exclusion to be *solely* by reason of disability to be actionable, while the ADA requires only that the exclusion be based in some part on the victim's disability. *See id.* As the City of Milwaukee receives federal financial assistance, the City is constrained by both sets of laws.

As part of the ADA, Congress instructed the Attorney General to issue regulations implementing the provisions of Title II, including the discrimination proscription. *See* 42 U.S.C. § 12134(a). Consistent with case law under the Rehabilitation Act, the Attorney General directed that "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fun-

damentally alter the nature of the service, program, or activity." 28 CFR § 35.130(b)(7) (1998). Therefore, the underlying premise of WCS's argument is proven—governments such as the City of Milwaukee are, indeed, required to modify their policies reasonably to ensure that disabled individuals receive the same access to governmental services (such as zoning) enjoyed by the non-disabled.

■ Before a governmental entity can be required to make a "reasonable modification" to its policies, however, the party seeking such a modification must specifically request it. *See United States of America v. Village of Palatine, Illinois,* 37 F.3d 1230, 1233 (7th Cir.1994); *Oconomowoc Residential Programs, Inc. v. City of Greenfield,* 23 F.Supp.2d 941, 955 (E.D.Wis.1998). WCS satisfied this requirement by requesting a special use permit and requesting that the BOZA take into consideration its clients' disabilities when deciding whether to grant the permit. *Cf. Oconomowoc Residential,* 23 F.Supp.2d at 955 (plaintiff met request requirement by seeking zoning exception)(citing *Oxford House, Inc. v. City of Virginia Beach,* 825 F.Supp. 1251, 1260–61 (E.D.Va.1993). Therefore, if the BOZA had the power to consider reasonably modifying its interpretation policies for granting special use permits to clinics serving the disabled (as the court finds), WCS did everything legally required to obtain such a reasonable modification.

■ The City of Milwaukee nonetheless argues that the BOZA was not required to modify its policies reasonably. It raises two arguments in this regard. The first is partly procedural. The defen-

---

**3.** Section 504 of the Rehabilitation Act states, in relevant part, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a).

dant argues that due to Article III ripeness concerns,[4] no federal court can force the BOZA to comply with the ADA or the Rehabilitation Act. This is because before a federal court may become involved in a reasonable modification dispute, the defendant public entity must have issued a "final decision" denying the requested modification. *See Williamson Cty. Regional Planning Comm'n. v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Sunrise Development, Inc. v. Town of Huntington,* 62 F.Supp.2d 762, 770 (E.D.N.Y.1999). The City claims that since the Milwaukee Common Council could conceivably rezone the area around 3716 West Wisconsin Avenue to permit mental health clinics, there has been no "final decision" and WCS is therefore powerless to seek relief in the courts.

■ The appropriate decisionmaker whose decision must be final before a modification request becomes ripe for federal court adjudication is determined by state law. *Cf. Acierno v. Mitchell,* 6 F.3d 970, 974 (3rd Cir.1993)(applying finality requirement to land use request). Under Wisconsin law, a municipal board of zoning appeals has the power to "hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of [zoning laws;] to hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; [and] to authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the

provisions of the ordinance will result in practical difficulty or unnecessary hardship, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done." Wis. Stats. § 62.23(e)(7). Consistent with this statute, the City of Milwaukee did create a board of zoning appeals. *See* MCO § 295–59. Furthermore, the City provided that the board of zoning appeals may grant a special use permit without further authorization from the Milwaukee Common Council. *See id.*

Pointing to the statutes cited above, which assign primary zoning responsibilities for the City of Milwaukee to the Milwaukee BOZA, the plaintiff contends that it has received a final decision from the appropriate decisionmaker denying its requested special use permit and that the matter is ripe for review. As mentioned above, the City disagrees. The City contends that when the BOZA denied WCS's requested special use permit, WCS should have gone before the Milwaukee Common Council and requested that their parcel of land be rezoned from a "local business district" (in which health clinics are permitted "special uses") to a "residential and office district" or "commercial service district" (where establishment of a mental health clinic is a permitted use for which no permit is required, as opposed to a "special use"). The City contends that only after seeking and failing to receive such rezoning would WCS have received the requisite negative final decision. Interestingly, however, the City of Milwaukee has no procedure for spot zoning. Moreover, such rezoning is generally prohibited in Wisconsin. *See Buhler v. Racine County,* 33 Wis.2d 137, 145–46, 146

---

4. Article III, Section 2, of the United States Constitution states that the federal judicial power only extends to "cases" and "controversies." Thus, federal courts must await the development of a real—not hypothetical—dispute before exercising jurisdiction over a matter. *See, e.g., Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 218, 94 S.Ct. 2925 (1974).

N.W.2d 403 (1966). Thus, the only way for WCS to comply with the procedure suggested by the defendant would be for WCS to request a change to Milwaukee's zoning district boundaries. *See* MCO § 295–61. This is a long and cumbersome process that would affect many parties besides WCS.

■ The court has little difficulty finding that WCS has satisfied the finality requirement. The City's argument that the plaintiff should have sought not just a special use permit or variance, but a complete rezoning of its property is a familiar one that has been rejected by every federal court to consider it. *See Sunrise,* 62 F.Supp.2d at 770; *Innovative Health Systems, Inc. v. City of White Plains ("Innovative Health I"),* 931 F.Supp. 222, 244–45 (S.D.N.Y.1996), *aff'd.* 117 F.3d 37 (2nd Cir.1997); *Oxford House v. Township of Cherry Hill,* 799 F.Supp. 450, 462 n. 25 (D.N.J.1992); *United States of America v. City of Taylor, Michigan,* 798 F.Supp. 442, 449 (E.D.Mich.1992). Indeed, courts have long criticized defendants who seek to require the disabled to undergo onerous processes whose results are uncertain simply to vindicate their Congressionally-guaranteed right to receive reasonable modifications to municipal regulations. *See, e.g., Sunrise,* 62 F.Supp.2d at 777. The only case cited by the City holding that a disabled plaintiff seeking a deviation from usual zoning laws must seek relief from more than a municipal board of zoning appeals is *County of Sawyer Zoning Bd. v. State of Wisconsin Department of Workforce Development,* 231 Wis.2d 534, 605 N.W.2d 627 (Ct.App.1999). That decision is easily distinguished, however, in that it was decided not under federal anti-discrimination law, but state anti-discrimination law (in fact, this point was specifically noted, *See* 231 Wis.2d at 543 n. 5, 605 N.W.2d 627). The anti-discrimination laws

of the State of Wisconsin do not apply to zoning decisions, however. *See id.* Thus, it comes as little surprise that the Wisconsin Court of Appeals would rule that a party seeking a zoning action not explicitly authorized by law would have to seek an alteration in the underlying law: there simply was no need or opportunity for a board of zoning appeals to consider a reasonable accommodation at an earlier stage of the proceedings.

■ In contrast, it is well-established that both the ADA and the Rehabilitation Act *do* apply to zoning decisions. *See Innovative Health Sys., Inc. v. City of White Plains ("Innovative Health II"),* 117 F.3d 37, 45–46 (2nd Cir.1997); *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch,* 179 F.3d 725, 731 (9th Cir.1999); *Oconomowoc Residential,* 23 F.Supp.2d at 952; *United States of America v. Village of Marshall, Wisconsin,* 787 F.Supp. 872, 877 (W.D.Wis.1991); *Discovery House, Inc. v. Consolidated City of Indianapolis,* 43 F.Supp.2d 997, 1002–1003 (N.D.Ind.1999). Therefore, numerous courts have ruled that municipal boards of zoning appeals are required to consider making reasonable accommodations of their policies when faced by zoning requests from disabled individuals or their representatives. *See Sunrise,* 62 F.Supp.2d at 770; *Innovative Health I,* 931 F.Supp. at 244–45 (S.D.N.Y.1996); *Cherry Hill,* 799 F.Supp. at 462 n. 25; *Taylor,* 798 F.Supp. at 449. The BOZA's decision not to do so was a final adverse decision and created a controversy ripe for review by this court.

■ The City next argues that the facts of this case are distinguishable from *Sunrise, Innovative Health I, Cherry Hill,* and *Taylor,* in that its board of zoning appeals simply did not have the power to consider making a reasonable accommoda-

tion to its policies. The court rejects this argument.

The basis of the City's argument is, again, *Sawyer*. *Sawyer* can be read to hold that a BOZA may not act in excess of its statutory authority.[5] The Milwaukee BOZA's authority is established, in part, in MCO § 295–59–5.5–c, which states "No special use shall be granted unless the board, after due notice to the parties of interest, finds [that the four criteria outlined in the Background section have been met]." The City argues that if those criteria have not been met, a BOZA cannot in any circumstances consider granting a special use permit. The City neglects to note, however, that the BOZA itself has the power to interpret these four criteria. *See* MCO § 295–59–1. Thus, to the extent the BOZA can make a reasonable modification to its usual policies in interpreting these criteria, it is required to do so. *See* 28 CFR § 35.130(b)(7) (municipality shall make reasonable modifications to its policies to benefit the disabled). Further, to the extent an exception is required to these criteria, the BOZA is authorized by law to consider such an exception. *See* MCO § 295–59–1 ("There is created a

board of appeals which shall have the powers granted by state statutes"); Wis. Stats. § 62.23(e)(7)("The board of appeals shall have the ... power[] to hear and decide special exception[s] to the terms of the ordinance upon which such board is required to pass under such ordinance").[6] Thus, *Sawyer* presents no bar to consideration of a reasonable modification to interpretation of the four special use criteria the Milwaukee Common Council has established in MCO § 295–59–5.5–c.

■ Even if *Sawyer* or MCO § 295–59–5.5–c did pose obstacles to consideration of reasonable modifications of the BOZA's traditional policies in interpreting its four standard special use criteria, those obstacles would be swept away by the ADA and the Rehabilitation Act. This is because federal laws (and specifically, the ADA and the Rehabilitation Act) supersede local laws. *See, e.g., Oconomowoc Residential*, 23 F.Supp.2d at 951–52. Thus, to the extent the ADA and the Rehabilitation Act require a local body to consider additional factors when making zoning decisions, the federal laws apply.

**5.** The court wishes to reiterate that *Sawyer* provides little, if any, guidance for the present dispute since it was decided under state, not federal, law.

**6.** The City refutes this proposition. Although the City concedes that the section of the Wisconsin Statutes conferring "powers" upon boards of zoning appeals (Wis.Stats. § 62.23(7)(e)(7) states that in Wisconsin BOZAs shall have the power to consider special exceptions to the terms of otherwise controlling ordinances, the City notes that another section of the Wisconsin Statutes, Section 62.23(7)(e)(7) (essentially a definitions section), notes a similar power but states exceptions "may" be made "in accordance with general or specific rules" established locally. The City claims that it did not make any specific rules permitting special exceptions and therefore that the Milwaukee BOZA was powerless to consider making any special ex-

ceptions. The court admits that these two provisions might be said to conflict: the "powers" section appears to grant a very broad exception-making power, while the definition section seems to suggest a BOZA's exception-making powers are limited by the boundaries of local law. The City has failed to cite any legislative history or state court decisions indicating which provision should apply in the current case, however. As the "powers" section indicates that a BOZA such as Milwaukee's does, in fact, have the power to consider making exceptions as conditions warrant, the court will adopt this provision as controlling. After all, it embodies the Wisconsin legislature's clearest intent on the issue of BOZA "powers," and comports more comfortably with the dictates of federal law, which the court presumes the legislature did not intend to violate.

Therefore, the court concludes that a board of zoning appeals in Wisconsin (and specifically in Milwaukee) has the power to consider reasonable modifications to its four standard decision-making criteria when deciding whether to grant a special use permit.

■ ˙The same conclusion is reached by looking to the policies underlying the federal and local laws, not just the text. In essence, the City is arguing that because it did not explicitly give its specifically-designated zoning body the power to consider making reasonable modifications to its policies (a contention the court has refuted above), it is not required to do so. A city may not exempt itself from the ADA and the Rehabilitation Act in this manner, however. *Cf. PGA Tour, Inc. v. Martin,* 532 U.S. 661, 121 S.Ct. 1879, 1896, 149 L.Ed.2d 904 (2001)(rejecting PGA's argument that it could not consider granting an exception to its rules because the rules did not provide for exceptions). If it could, no zoning body nationwide would have to comply with the ADA or the Rehabilitation Act unless it voluntarily created legislation to do so. This certainly was not Congress's intent in passing these two landmark pieces of anti-discrimination legislation. In fact, Congress specifically noted that the ADA was required to fight many years of discrimination by municipal bodies who had not voluntarily granted reasonable accommodations to the disabled. *See* 42 U.S.C. § 12101(a)(3), (5). The City has cited no legislative history, decisions from the Wisconsin Supreme Court, or on-point federal cases suggesting the Milwaukee BOZA did not have the power to consider a reasonable modification to its four stan-

dard criteria in making its decision with respect to WCS as a reasonable accommodation under the ADA or the Rehabilitation Act. In light of the foregoing discussion, the court finds as a matter of law that the BOZA *did* have the power to consider making a reasonable modification under the ADA and the Rehabilitation Act—a power, the court might add, the Milwaukee BOZA has exercised willingly on previous analogous occasions. *See, e.g., Oconomowoc Residential Programs, Inc. v. City of Milwaukee,* Case No. 97–CV–251 (E.D.Wis.)(previous case before this court in which the Milwaukee Board of Zoning Appeals considered making a reasonable modification to a state zoning law under the Fair Housing Act).

■ It is clear, then, that the Milwaukee BOZA violated the ADA and the Rehabilitation Act in failing even to consider making a reasonable accommodation to WCS when requested to do so. *Cf. PGA,* 121 S.Ct. at 1896 (no public accommodation is "exempt" from the ADA). This does not necessarily mean that WCS is entitled to the relief it seeks. WCS bears the burden of establishing all the elements of its claim before the court may enter judgment in its favor.[7]

In order to establish a claim for injunctive relief under the ADA or the Rehabilitation Act, a plaintiff must show that it (or a party it represents) is a "qualified" individual with a disability, *see* 42 U.S.C. § 12132, that the requested relief would not work a "fundamental change" to the services being requested, *see* 28 CFR § 35.130(b)(7), that the relief is "reasonable," *see id.,* and that it is "necessary," *see id.* Unfortunately, the court has been

---

7. As a movant seeking partial summary judgment, WCS bears the burden of showing there is no genuine issue as to any material fact underpinning its right to relief. *See* Fed. R.Civ.P. 56(c). As a movant seeking a prelim-

inary injunction, WCS bears the burden of showing a likelihood of success on the merits. *See Davids v. Coyhis,* 857 F.Supp. 641, 646 (E.D.Wis.1994).

presented with very little evidence related to these elements, due primarily to BOZA's refusal to accept such evidence.

WCS claims that the lack of evidence entitles it to summary judgment. After all, it is a non-movant's duty to present specific facts showing there is a genuine issue of material fact related to the movant's entitlement to judgment as a matter of law, see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and the City has largely failed to present any evidence that would suggest WCS does not satisfy all the elements for ADA and Rehabilitation Act claims. Furthermore, WCS argues, any lack of evidence is the City's "fault" and the City should suffer the consequences. WCS's simplistic argument is unconvincing.

Regardless of the standards that might be established to guide them, courts at all times are to serve one over-riding goal—the dispensation of justice. *See In re Whitaker*, 514 U.S. 208, 210, 115 S.Ct. 1446, 131 L.Ed.2d 324 (1995) (primary goal of the courts is to "fairly dispens[e] justice") (Stevens, J., dissenting). It cannot by any perversion of the definition be said to be "just" to grant a party judgment simply because they *may* be entitled to it, but there is little evidence one way or the other. To do so would be equivalent to flipping a coin.

The situation the court faces is much like one faced by a court of appeals when a trial jury has reached a verdict on clearly erroneous jury instructions. If one of the parties has been prejudiced by the erroneous instruction, the court will remand the case to the trial court so deliberations may be undertaken under correct guidelines. *See* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 11 *Federal Practice and Procedure* § 2886 n. 8 (collecting cases). Here, one might say that the BOZA was given an erroneous instruction-the instruction not to consider evidence related to the ADA or the Rehabilitation Act. This erroneous instruction affected everyone—the plaintiff, the City and, most importantly, members of the general public who may have had relevant evidence to present. The court is very cognizant of the fact WCS and the City are not the only parties that would be affected by entry of summary judgment or a preliminary injunction in this case: the residents of the Merrill Park neighborhood near 3716 West Wisconsin Avenue would also be affected. The court is hesitant to act without giving all of these parties an opportunity to present their case.

What sort of evidence would the court consider relevant? The first, and perhaps most significant, type of evidence the court would consider relevant is evidence addressing whether WCS's clients pose a "significant risk" to the public that cannot be ameliorated by reasonable accommodations. If WCS's clients *do* pose such a risk, they are not "qualified" individuals with disabilities and are not entitled to injunctive relief. *See School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n. 16, 107 S.Ct. 1123 (1987); 29 U.S.C. § 706(8)(D). Of course, such evidence must be objective and must address the nature, duration, and severity of risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. *See* 28 C.F.R. Pt. 35, App. A; *Arline*, 480 U.S. at 287–88, 107 S.Ct. 1123; *Washington v. Indiana High School Athletic Ass'n, Inc.*, 181 F.3d 840, 851 n. 14 (7th Cir.1999). Prejudice, stereotypes, and unfounded fear will not be considered by the courts. *See Arline*, 480 U.S. at 287, 107 S.Ct. 1123 ("goal" of the Rehabilitation Act is to protect "handicapped individuals from depri-

vations based on prejudice, stereotypes, or unfounded fear"); *Innovative Health II,* 117 F.3d at 49.

The next issue to which the parties may wish to direct attention is whether WCS's requested accommodation would create a "fundamental change" in zoning services within the City of Milwaukee. *See* 28 C.F.R. § 35.130(b)(7)˙ (establishing fundamental change element). *Cf. PGA,* 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (applying fundamental change element); *Washington,* 181 F.3d at 852 (same). On the surface it does not appear likely that this issue will attract much attention, but it may. ˙

■ Another issue on which parties might submit relevant evidence is the "reasonableness" of WCS's requested accommodation. And, here, "reasonableness" does not necessarily mean what might be indicated in a dictionary; it means primarily whether the requested accommodation will impose an undue financial or administrative burden on the defendant. *See Arline,* 480 U.S. at 287–88, 107 S.Ct. 1123 (citing *Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Washington,* 181 F.3d at 850; *Cherry Hill,* 799 F.Supp. at 461; *Tellurian U.C.A.N., Inc. v. Goodrich,* 178 Wis.2d 205, 215, 504 N.W.2d 342 (Ct.App.1993)(applying federal law). Furthermore, the reasonableness inquiry involves something of a balancing test. A court may consider the extent to which a requested accommodation would undermine the legitimate purposes and effects of existing zoning regulations, but it must also balance those purposes and effects against the benefits the accommodation would provide to the handicapped. *See Oconomowoc Residential,* 23 F.Supp.2d at 956. Legitimate safety concerns might be addressed in this element, *see Innovative Health II,* 117 F.3d at 49, but safety is an

issue primarily addressed in the qualified individual/significant risk inquiry, *see Bay Area,* 179 F.3d at 736.

■ The final type of evidence the court would consider relevant for an ADA / Rehabilitation Act claim such as WCS's is the "necessity" of the requested accommodation. Again, this is a term of art and does not necessarily mean what a dictionary might suggest. "Necessary" within the context of the ADA means capable of providing direct amelioration of a problem facing qualified individuals with disabilities. *See Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir.1995). Nonetheless, evidence related to other properties considered by WCS and properties still available on the market would be very useful in evaluating this element. *Cf. Assisted Living Associates of Moorestown, L.L.C. v. Moorestown Township,* 996 F.Supp. 409 (D.N.J.1998)(finding requested injunction altering zoning regulations necessary because no other property served the legitimate business needs of the plaintiff asserting rights of the disabled).

The above discussion is intended solely to provide the BOZA with some guidance as to the types of evidence the court would have found useful in evaluating WCS's claim, and which may be deemed relevant by the BOZA on remand. It is possible (indeed likely) that the present lawsuit will require further adjudication in the future. In that eventuality, the court should have nothing less than a complete record before it.

Accordingly,

**IT IS ORDERED** that Marquette University High School's request for leave to intervene as an *amicus curiae* be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the City of Milwaukee's motion for enlargement of time in which to file a brief and

related papers *instanter* be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiffs' motion for a preliminary injunction be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiffs' motion for a scheduling conference be and the same is hereby **DENIED** as moot; and

**IT IS FURTHER ORDERED** that this matter be remanded to the Milwaukee Board of Zoning Appeals for further proceedings not inconsistent with this order.