STATE of Wisconsin, Petitioner-Appellant,

v.

OZAUKEE COUNTY BOARD OF ADJUSTMENT,
Respondent.

Court of Appeals

*No. 89-0016. Submitted on briefs August 25, 1989.—Decided
October 4, 1989.*

(Also reported in 449 N.W.2d 47.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general and *Thomas L. Dosch,* assistant attorney general.

On behalf of the respondent, the cause was submitted on the brief of *Dennis E. Kenealy,* corporation counsel.

Before Brown, P.J., Scott, J., and Robert J. Parins, Reserve Judge.

BROWN, P.J.   In this zoning case, the circuit court upheld the Ozaukee County Board of Adjustment's decision granting four variances from ordinances governing shoreland and floodplain property. The state of Wisconsin appeals and we reverse, holding that the board acted outside its jurisdiction, granted the variances upon insufficient evidence, and reached decisions that represented its will and not its judgment.

At issue in this case is an approximately seven-acre piece of property abutting Cedar Creek in Cedarburg, Ozaukee county. An old mill building, previously used as a nail factory and for storage, stands on the property in an area determined by the DNR to be a floodway.

Peter Renner, owner of the property, wants to develop the area with a mix of businesses, shops and

555

restaurants. In furtherance of this plan, he applied to the Ozaukee County Board of Adjustment for variances from the county's shoreland and floodplain zoning ordinances.

The board granted the four variances requested:

1. To make additions to a building located in a floodway.

2. To spend more then 50 percent of the assessed value of a property.

3. To reduce setbacks from 75 feet to 0 feet for a restaurant and stores.

4. To change the use of a preexisting structure from a nail factory to a restaurant with stores.

In support of its decision, the board made eight findings:

[1]. The unique nature of this property warrants the most reasonable use of the property and that a literal interpretation of the zoning code would deprive restaurant customers of a spectacular view.

[2]. That the variance is not contrary to the public interest because the project would increase the Ozaukee County tax base.

[3]. That the variance is not granted on the basis of economic gain because it would cost more to build the restaurant in the proposed location rather than the buildable area.

[4]. That this hardship is not self-created because the unique nature of the property warrants development.

[5]. That the variance may increase property values of other parties in the area.

[6]. That Mr. Renner's engineers have told him that the Department of Natural Resources' evaluations are incorrect since the factory has not been damaged by a flood during the last 107 years.

[7]. Even though the variance extends and increases a nonpermitted use, the property should be developed for the reasons set forth in this opinion.

[8]. After weighing the competing interests, the board finds that economic development in Ozaukee County is in the public interest and that this interest must supersede other interests such as preservation of the natural shoreline.

Ozaukee, Wis., *Ozaukee County Code of Ordinances* sec. 7.106(1) (1986), forbids granting variances allowing or increasing any use of property that is prohibited in the zoning district. The ordinance does permit the board to grant variances from the dimensional standards of the zoning ordinance. Sec. 7.106, Ozaukee Ords. To the applicant is assigned:

> the burden of demonstrating convincingly that the literal enforcement of the provisions of the ordinance will:
>
> (a) result in unnecessary hardship on the applicant due to special conditions unique to the property; and
>
> (b) that such variance is not contrary to the public interest.
>
> (c) The hardship is due to adoption of the flood-plain ordinance and special conditions unique to the property; not common to a group of adjacent lots or premises (in such case that the ordinance or map must be amended).
>
> (d) Such variance is consistent with the purpose of this ordinance stated in Section 7.013.

*Id.*

Unnecessary hardship is defined in the ordinance as "circumstances where special conditions affecting a particular property, which were not self-created, have made strict conformity with restrictions governing areas, set-

backs, frontage, height or density unnecessarily burdensome or unreasonable in light of the purposes of the ordinance." Sec. 7.132(53), Ozaukee Ords.

At the variance hearing, the board appeared singularly unconcerned with holding Renner to his burden of proof. The board members instead made statements in favor of the development, objected to the DNR's strict adherence to the law, and indicated that the DNR's objections to the variances were irrelevant unless the DNR first proved that the project would cause flood damage. An official representing the town of Cedarburg told the board that the arguments of corporation counsel and counsel for the DNR were "a bunch of baloney" and that Renner's plans were "probably the best possible use of that piece of property." He urged the board to "show a little backbone" to counsel.

Renner's attorney asserted that the existing building was historic, and that its development would result in economic gain and increased tourism. Inability to build as planned would, he argued, deprive prospective restaurant patrons of a unique view.

This case is before us on certiorari, and thus our review is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *Snyder v. Waukesha County Zoning Bd.,* 74 Wis. 2d 468, 475, 247 N.W.2d 98, 102 (1976). The record reveals that virtually every prerequisite for granting variances was disregarded by the board, and we conclude that the board's determination cannot be sustained.

Pursuant to sec. 7.106, Ozaukee Ords., the board may grant dimensional variances but is without jurisdiction to grant a "use" variance. Ozaukee county argues that a "use" variance and a "dimensional" variance are synonymous. Therefore, it asserts, liberal construction of the ordinances in favor of the property owner's rights requires that we interpret the ordinances as allowing all variances. We disagree, rejecting the county's premise that "use" and "dimension" are synonyms.

The rules governing interpretation of ordinances and of statutes are the same. *Hambleton v. Friedmann,* 117 Wis. 2d 460, 462, 344 N.W.2d 212, 213 (Ct. App. 1984). Interpretation of statutes presents a question of law that we decide independently. *Id.* at 461, 344 N.W.2d at 213.

It is a cardinal rule of construction that no part of a statute should be rendered superfluous by interpretation. *State v. Morse,* 126 Wis. 2d 1, 5, 374 N.W.2d 388, 390 (Ct. App. 1985). If the board's interpretation of the word "dimensional" as meaning "use" is correct, the ordinance barring "use" variances would be rendered meaningless; it would bar a kind of variance that does not exist. We will therefore endeavor to give a meaning to the term "dimensional" that distinguishes it from the term "use."

As a general rule, variances are subclassified into "use" variances and "area" variances. 82 Am. Jur. 2d *Zoning and Planning* sec. 266, at 805 (1976). Our supreme court uses this terminology in discussing zoning variances. *See Snyder,* 74 Wis. 2d at 474-75, 247 N.W.2d at 102.

As its name implies, a "use" variance is one which permits a use of land other than that which is prescribed by the zoning regulations. *Alumni Control Bd. v. City of Lincoln,* 137 N.W.2d 800, 802 (Neb. 1965); 82 Am. Jur. 2d *Zoning and Planning* sec. 256, at 792. Area variances govern restrictions on "area, set backs, frontage, height, bulk or density." *Snyder,* 74 Wis. 2d at 475, 247 N.W.2d at 102. While "use" variances govern the purposes to which land and structures are put, "area" variances govern size and shape of land and structures; they have been characterized as a shorthand description of a variance from structural and lot-area restrictions. *See* 82 Am. Jur. 2d *Zoning and Planning* sec. 256.

The Ozaukee ordinances refer to "use" variances and to variances from "dimensional standards." *See* sec. 7.106, Ozaukee Ords. In determining the ordinary meaning of "dimensional," we may look to a recognized dictionary. *See State v. Demars,* 119 Wis. 2d 19, 23, 349 N.W.2d 708, 710 (Ct. App. 1984). *Webster's Third New International Dictionary* 634 (1976), defines "dimension" as:

> the physical characteristic of length, breadth, or thickness . . . the quality of spatial extension . . . the range over which or the degree to which something extends . . ..

As with "area," the synonym listed by Webster's for "dimension" is "size." *See id.* at 634, 115.

We hold that the meaning of "dimensional" variance is synonymous with that of "area" variance, as both shorthand terms are concerned with the spatial extension of land and the structures upon it. The Ozaukee

county ordinances applicable here thus address two distinct kinds of variances: "use" variances, which are not permitted, and "dimensional" variances, which may be granted. *See* sec. 7.106, Ozaukee Ords.

The ordinances permit a variety of uses for property in a floodway including: agricultural uses, nonstructural industrial and commercial uses, private and public recreational uses, such as golf courses and tennis courts, extraction of materials, functionally water-dependent uses such as docks and dams, public utilities, campgrounds, and uses or structures accessory to open space uses, or essential for historical areas. Sec. 7.084(6)(b) 1–8, Ozaukee Ords.

■

The plan for a restaurant and/or shopping complex satisfies none of these criteria for permitted uses. Plainly the first seven are immaterial to Renner's development plans. As to the last, while counsel asserted that the old mill building was historic, there is nothing in the record to suggest that converting the allegedly historic building as planned is "essential to maintaining a historic area." First, zoning law generally recognizes as historic areas those that have been designated as such pursuant to law. *See* Anderson, *American Law of Zoning 3d,* sec. 18.15, at 278–79 (1986). The record contains no evidence of such a designation, either formal, or by informal community sentiment. Second, the record reveals no reason why putting a restaurant in the building, or attaching a restaurant to it, is essential for preserving the area's historic characteristics. The only concrete reason for the use variance is the spectacular view of the falls that the restaurant patrons would be afforded. This is unrelated to historic preservation. We conclude that Renner's plans meet none of the permitted uses.

In granting Renner a variance to construct a restaurant in the mill building, the board thus allowed a nonpermitted use of the structure. Section 7.106(1), Ozaukee Ords. expressly states that the board "shall not" grant a use variance. Ordinarily, the word "shall" connotes a mandatory directive. *State v. McKenzie,* 139 Wis. 2d 171, 176, 407 N.W.2d 274, 276–77 (Ct. App. 1987). We see nothing in the plain language of this ordinance that requires us to go outside the language used to discern a contrary intent. *See id.* at 176, 407 N.W.2d at 276. Therefore, the first of the four variances granted was impermissible.

Nor did Renner show that the remaining variances were permissible pursuant to factors listed in sec. 7.106, Ozaukee Ords.

First, the ordinance requires a showing of hardship, defined as an unreasonable and unnecessary burden created by enforcement of the dimensional standards of the ordinance. However, all of the variances were granted upon evidence concerning changing the use of the mill building. All assertions of hardship were premised on the assumption that a use variance would be granted for that structure. Therefore, conformity with the dimensional standards of the ordinances creates no unreasonable or unnecessary burden. The evidence shows that the only burden eased by granting a variance from the ordinances' dimensional standards is that of being unable to construct the restaurant and/or shopping complex around the floodway structure. That burden is self-created and granting the dimensional variances would not lighten it; the ordinances governing use of floodway property sustain the burden unassisted.

Second, sec. 7.106(2)(b), Ozaukee Ords. prohibits the board from granting variances when hardship is

based solely on economic gain or loss. Here, the board granted the variances to increase the county's tax base, increase property values in the area, and to further economic development. The variances were thus admittedly granted for the county's economic gain. Standing alone, that is an insufficient basis upon which to grant a variance.

The only other "hardship" noted, beyond deprivation of revenue, is the deprivation of the prospective restaurant customers' spectacular view. Wisconsin law does not recognize this as a hardship. "Practical difficulties or unnecessary hardship do not include conditions personal to the owner of the land, but rather to the conditions especially affecting the lot in question." *Snyder,* 74 Wis. 2d at 479, 247 N.W.2d at 104. In this case, the asserted hardship is created by Renner's plan to put a restaurant in the mill building, not by conditions unique to the land. Had Renner's plans for this structure included putting it to a permitted use, those entering it for the permitted purpose would presumably be treated to the spectacular view it affords.

Finally, none of the variances was granted in light of the purposes of the zoning ordinance, as required by sec. 7.132(53), Ozaukee Ords. These include promotion of public health, safety, convenience and welfare by limiting structures to those areas where soil and geological conditions will provide safe foundations, preventing shoreline encroachment by structures, and controlling shoreland excavation and other earth moving activities. *See* sec. 7.013, Ozaukee Ords. The board's findings take none of these environmental concerns into account.

This court understands that the board's decision to grant the variances was in furtherance of what it perceived was the best economic use of Renner's property

and would be of great benefit to the county. However, the ordinances forbid the use requested. The ordinances represent the political will of the community and the state, for they are enacted pursuant to administrative regulations that are in turn enabled by legislation. *See* secs. 87.30, 59.971, Stats.; Wis. Adm. Code secs. *NR 115.05*(1), *NR 116.05* (1). That will is expressed by those elected to the state legislature and by the county board. The board of adjustment must act pursuant to the law, for ours is a government of laws and not of men.

Wisconsin has long held that laws and regulations to protect the waters of this state from degradation are valid police-power enactments. *Just v. Marinette County,* 56 Wis. 2d 7, 18, 201 N.W.2d 761, 768 (1972). The active public trust duty of the state of Wisconsin has been held to include protection and preservation of waters for fishing, recreation, and scenic beauty. *Id.* To further this duty the legislature may delegate authority to local units of the government, which the state did by requiring counties to pass shoreland ordinances. *Id.* at 18, 201 N.W.2d at 769. Floodplain zoning is recognized as a necessary tool to protect human life and health and to minimize property damages and economic losses. Wis. Adm. Code sec. *NR 116.01*(1).

The governing law gives the board exacting rules to follow when faced with the sometimes competing demands of environmental and economic realities. In "show[ing] a little backbone," as it was advised to do by one official in attendance at the variance hearing, the board stripped itself free from the rules placed upon it by the political will and effectively rewrote the law to further the perceived economic agenda of its community. However, the board of adjustment is not authorized to

rewrite the law, but rather, to apply it. This court has a similar mandate, and, constrained as we are to follow the law, we must reverse the decision of the board.

*By the Court.*—Order reversed.