ANNETTE KINGSLAND ZIEGLER, J. (dissenting).
¶31 I dissent from the majority opinion because *775 it misconstrues Milwaukee County General Ordinances ("MCGO") §§ 201.24(4.1)(2) and 201.24(3.11)(1). It errantly dispenses with the choices set out in the ordinances that use two different phrases: (1) "covered by the terms of a collective bargaining agreement" and (2) "covered by a collective bargaining agreement." The opinion pays no heed to whether the phrases chosen by the Milwaukee County Board of Supervisors have distinct meanings. Rather, it conflates the terms despite their use in the context of this and also nearby, closely-related ordinance sections. The majority completely disregards this language and yet claims to engage in a plain meaning analysis that serves to render "by the terms of" mere surplusage. Instead of evaluating whether that language can be construed to have meaning, the majority injects its conclusion that the Board of Supervisors did not mean what it said, relying on the notion "that at times drafters ... include words that add nothing of substance." Majority op., ¶24 (internal quotations omitted). Such an interpretation stands in opposition to basic rules of construction, which traditionally strive to give effect to each word of an ordinance when possible. Due to the majority's significant departure from a plain meaning analysis of § 201.24(4.1)(2), I respectfully dissent.
I
¶32 The most glaring error in the majority's interpretation of MCGO § 201.24(4.1)(2) lies in its failure to evaluate whether the language "covered by the terms of a collective bargaining agreement," as used throughout the subsection, could indeed have meaning when compared with a previous section of the ordinance that does not use that phrase. The majority *776 proclaims its intent to adhere to the plain text of the ordinance, and then ignores traditional tools of construction to conclude that "[b]ecause no contractual obligations existed on September 29, 2011," pursuant to an active collective bargaining agreement ("CBA"), "the members of DC-48 were not 'covered by the terms' of a CBA on that date." Majority op., ¶16. As will be explained below, such an interpretation belies the plain meaning of the ordinance.
A
¶33 It is well-established that the rules regarding the interpretation of state statutes apply equally when interpreting local ordinances. State v. Ozaukee Cty. Bd. of Adjustment, 152 Wis. 2d 552, 559, 449 N.W.2d 47 (Ct. App. 1989) (citing Hambleton v. Friedmann, 117 Wis. 2d 460, 462, 344 N.W.2d 212 (Ct. App. 1984) ). I start then by addressing longstanding and fundamental principles of statutory interpretation that should guide our analysis.
¶34 In construing statutes, "[s]tatutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. However, *167 "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Id."In construing or *777 interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." Id.
¶35 Additionally and importantly, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id. The majority correctly states that this rule is not absolute, as "[s]ometimes drafters do repeat themselves and do include words that add nothing of substance[.]" Majority op., ¶24 (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012)). However, this is the exception, not the rule, when interpreting statutes. Indeed, we have repeatedly stated that we should strive to not interpret statutes in a manner that renders any word or phrase unnecessarily superfluous. See, e.g., Metropolitan Assocs. v. City of Milwaukee, 2018 WI 4, ¶¶41-42, 379 Wis. 2d 141, 905 N.W.2d 784 (interpreting Wis. Stat. § 70.32(1) so as to give effect to the word "practicably," leading to a conclusion that mass appraisal techniques are authorized by statute); Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶151, 358 Wis. 2d 1, 851 N.W.2d 337 (construing Milwaukee Charter Ordinance § 36-13-2-d as distinguishing between contributions made by the City of Milwaukee and contractually protected benefits of plan members such that "contributions" could not be considered a "benefit" because such an interpretation gave effect to each word of the ordinance and avoided surplusage); Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶55, 350 Wis. 2d 554, 835 N.W.2d 160 (reading Wis. Stat. § 893.80(3) to give effect to the phrase "the amount recoverable by any person" in the interest of avoiding rendering part of the statute surplusage, and thus concluding that an order for abatement is not covered by § 893.80(3) because abatement does not *778 entitle "any person" to "recover" any amount); see also Scalia & Garner, supra ¶35, at 176 ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.").
¶36 Moreover, when considering statutes, "[i]t is presumed that the legislature acted with full knowledge of the existing law, both the statute[s] and the court decision[s] interpreting it." Kindy v. Hayes, 44 Wis. 2d 301, 314, 171 N.W.2d 324 (1969) ; see also Blazekovic v. City of Milwaukee, 225 Wis. 2d 837, 845, 593 N.W.2d 809 (Ct. App. 1999) (stating that an analysis of statutes "begins with the presumption that the legislature knew the case law in existence" when it enacted the statutes); Carol J.R. v. Cty. of Milwaukee, 196 Wis. 2d 882, 888, 540 N.W.2d 233 (Ct. App. 1995). As we interpret state statutes and local ordinances the same way, there is no reason to disrupt that presumption here.
B
¶37 My analysis is driven by the plain meaning of the language in the ordinances at issue. Specifically, certain parts of the ordinances use the phrase "covered by the terms of a collective bargaining agreement" and other parts use the phrase "covered by a collective bargaining agreement." Instead of ascertaining why this choice might have been made, the majority quickly surmises that the language has no meaning and was gratuitously added.
*168 ¶38 The majority starts its analysis at the finish line, reading MCGO § 201.24(4.1)(2) in a manner that ascribes no meaning to the phrase "by the terms of," thus rendering the phrase functionally useless within subsection (4.1)(2). It concludes that, "[r]egardless *779 of what the County intended, the plain meaning of 'covered by the terms' of a CBA includes only those employees bound by a valid CBA," stating that it cannot "imagine how an employee could be 'covered by the terms' of an expired CBA that no longer binds its parties." Majority op., ¶13. But, as will be demonstrated, such an interpretation contradicts the plain text of the ordinance.[1] By utilizing the phrase "covered by the terms of," this section has broader reach, in that it results in fewer people being able to claim Rule of 75 benefits because even though they are not "covered by a collective bargaining agreement" then in existence, they may still be "covered by the terms of a collective bargaining agreement." If the drafters of the ordinance had intended to include all, rather than exclude some, a much simpler provision could have been drafted.
¶39 The at-issue ordinance determines eligibility for the "Rule of 75," which provides eligible Milwaukee County employees a full pension plan when an employee's age and years of service equals or exceeds 75. Milwaukee Cty. Gen. Or. § 201.24(4.1)(2)(a) creates Rule of 75 eligibility for any member who, on September 29, 2011, "is employed and is not covered by the terms of a collective bargaining agreement, and whose initial membership in the retirement system under section 201.24 began prior to January 1, 2006, and who *780 retires on and after September 1, 1993."[2] MCGO § 201.24(4.1)(2)(a). Thus, § 201.24(4.1)(2)(a) creates eligibility for any employee who: (1) initially became a member of the retirement system before January 1, 2006; (2) retires on or after September 1, 1993; and (3) on September 29, 2011, was employed and was not covered by the terms of a CBA.[3]
¶40 Subsection (4.1)(2)(b) creates eligibility for any "member who, on September 29, 2011, is employed and is covered by the terms of a collective bargaining agreement" with a few unions, including Municipal Employe[e]s District Council 48, "and whose initial membership date is prior to *169 January 1, 1994." MCGO § 201.24(4.1)(2)(b). Thus, under subsection (4.1)(2)(b), Rule of 75 benefits are afforded to any member of DC-48 or other enumerated union who: (1) initially *781 became a member prior to January 1, 1994; and (2) on September 29, 2011, was employed and was covered by the terms of a CBA.[4]
¶41 The majority construes subsections (4.1)(2)(a) and (4.1)(2)(b) in a vacuum to surmise that it creates two groups of members: (1) those covered by an existing CBA with one of the enumerated unions[5] ; and (2) those not covered by an existing CBA. Majority op. ¶13. The majority's construction is problematic, because it looks no further to determine why the phrase "by the terms of" was chosen when in the previous section it was not. Perhaps it is used because members could still be covered by the terms of a CBA no longer in effect. Since DC-48 members were not actually covered by an existing CBA on September 29, 2011, the majority creates, out of thin air, Rule of 75 eligibility for DC-48 members (along with members of other unions specified in subsection (4.1)(2)(b)) whose membership began after January 1, 1994, but before January 1, 2006. By not accounting for employees who might still be covered by the terms of an expired CBA, the majority's interpretation of subsections (4.1)(2)(a) and (4.1)(2)(b) results in Rule of 75 benefits being afforded to more DC-48 members than called for under the ordinance.[6]
*782 ¶42 The majority's construction of MCGO § 201.24(4.1)(2) goes no further to determine whether the different language might have meaning. Instead it conflates "covered by the terms of a collective bargaining agreement" with "covered by a collective bargaining agreement" and declares, without more, that the Board of Supervisors included words that added nothing of substance. See majority op., ¶24. In other words, the majority begins its analysis with an assumption that the legislative body did not mean what it said.
¶43 We most typically do not begin our analysis with an assumption that mandates one conclusion without further considering whether the words used might actually have meaning, especially in the context of a provision that was drafted in order to exclude certain people from Rule of 75 benefits. If the Rule of 75 was intended to apply to all, this provision would be unnecessary.
¶44 The majority dashes to interpret MCGO § 201.24(4.1)(2) by ignoring key language of the text itself and the fact that each phrase appears in surrounding provisions, for example, MCGO § 201.24(3.11). Under a proper understanding of the plain meaning of § 201.24(4.1)(2), since DC-48 members were covered by the terms of a CBA on September 29, 2011, they are eligible for Rule of 75 benefits only if they were employed on September 29, 2011, and initially became members prior to January 1, 1994. See MCGO § 201.24(4.1)(2)(b).
*170 This language has distinct meaning as is demonstrated by its use elsewhere.
¶45 As noted previously, statutory interpretation requires an evaluation of the context in which a *783 statute appears, as statutes are viewed not in isolation, but as part of a whole. Kalal, 271 Wis. 2d 633, ¶46, 681 N.W.2d 110. Ordinance interpretation follows the same rules. Ozaukee Cty. Bd. of Adjustment, 152 Wis. 2d at 559, 449 N.W.2d 47. We thus must consider MCGO § 201.24(4.1)(2) "in relation to the language of surrounding or closely-related [ordinances]." Kalal, 271 Wis. 2d 633, ¶46, 681 N.W.2d 110. The context surrounding § 201.24(4.1)(2) provides further support for my plain meaning interpretation. Crucially, in close proximity to the Rule of 75 ordinance, the Board of Supervisors directly distinguishes between "covered by the terms of a collective bargaining agreement" and "covered by a collective bargaining agreement" in a section dealing with mandatory employee contributions of funds to the retirement system. See MCGO § 201.24(3.11). Section 201.24(3.11)(1)(a) states, in pertinent part, "Each member of the employes' retirement system ... who is not covered by the terms of a collective bargaining agreement, or who is covered by a collective bargaining agreement that has adopted this ordinance," § 201.24(3.11)(1)(a) (emphasis added), except those contributing under a different subsection must contribute a percentage of the member's compensation under § 201.24(3.11).[7] The Board of Supervisors' choice to use differing language in neighboring sections of the County Employee Retirement System ordinances should be respected. Specifically, the subsection (3.11)(1)(a) ordinance language "covered by the terms of a collective bargaining agreement" and "covered by a collective bargaining agreement" is a distinction with a difference. We must presume that the Board of Supervisors' decision to use distinct language was purposeful. One of the two phrases would be *784 completely unnecessary if the other has the exact same meaning, yet the two phrases coexist, in the disjunctive, and in the same sentence, hence leading to the observation that they must have different meanings. While the majority does not assign any import to the different terms used in any section, it ought to be concerned with whether these phrases were chosen because they indeed each have a distinct, proscribed meaning. If they were identical in meaning, subsection (3.11)(1)(a) would not list them as alternatives to each other.
¶46 Subsection (3.11)(1)(a) means to include only employee retirement system members who are "covered by a collective bargaining agreement that has adopted this ordinance," or who are "not covered by the terms of a collective bargaining agreement." This begs the question: When would one be subject "to the terms of" a CBA but not be covered by it? The answer to this question: members may still be covered by the terms of a CBA when the CBA has expired but the terms might continue to apply.
¶47 Subsections (3.11)(1)(e) and (3.11)(1)(f) similarly illustrate this linguistic distinction. Subsection (3.11)(1)(e) applies to any member "who is covered by a collective bargaining agreement." MCGO § 201.24(3.11)(1)(e) (emphasis added). Subsection (3.11)(1)(f) applies to any member "who is covered by the terms of a collective bargaining agreement." § 201.24(3.11)(1)(f) (emphasis added). Why *171 again presume, as the majority does, that the Board of Supervisors' choice to create these distinctions deserves no significance? There are indeed categories of employees who may be covered by the terms of a CBA but are not actually covered by a CBA. *785 ¶48 Moreover, my interpretation of the plain meaning of MCGO § 201.24(4.1)(2) is further supported by a review of other parts of the ordinances, where the Board of Supervisors exclusively uses the phrase "covered by a collective bargaining agreement," without reference to "the terms of" any CBA. See § 201.24(2.18)(3)(a) (defining "[n]ormal retirement age" as 64 for a member (a) "who is not covered by a collective bargaining agreement" at the time his employment terminates; (b) who is "not an elected official" at the time his employment terminates; and (c) "whose initial membership in the retirement system began on or after January 1, 2010" (emphasis added)); MCGO § 203.2.6.f. (defining "[e]mploye" in part as "[t]hose employes who are members of a collective bargaining unit covered by a collective bargaining agreement which (as a result of good faith bargaining between the county and representatives of such unit) does not provide for their inclusion" (emphasis added)).
¶49 As a practical matter, the majority's interpretation of MCGO § 201.24(4.1)(2) is further flawed, as it renders the phrase "by the terms of" surplusage without consideration of how collective bargaining works. Given the status quo requirement-that even the parties agree has been and is controlling-key terms of the CBA must remain in effect until a successor CBA is negotiated and agreed to by the employer and the union. Might that be a reason for using the phrase "by the terms of"? Yes. Simply stated, certain terms of a CBA may have significance even after a CBA has expired. It is undisputed that on September 29, 2011, DC-48 employees were not actually covered by an existing CBA, as the CBA expired in 2009 and no new CBA was executed. Despite that, Milwaukee County was still required to maintain the terms of *786 DC-48's expired CBA regarding base wages. Thus, terms of DC-48's expired CBA with Milwaukee County remained in effect, and on September 29, 2011, DC-48 members were covered by the terms of a CBA despite the fact that the CBA was expired. The majority's reading of § 201.24(4.1)(2) fails to give any consideration to this basic principle to which the parties even agree.
¶50 Thus, these ordinances can indeed be interpreted to give meaning to this language and with reason, draw a distinction between members "covered by the terms of" a CBA and members "covered by" a CBA. The majority claims that my analysis "strays from the text of the ordinance while assigning unwarranted import to the phrase 'the terms of' " in the CBA. Majority op., ¶22. To the contrary, as I have shown, I adhere to the text of the ordinance, reading MCGO § 201.24(4.1)(2) completely and giving effect to each word in the ordinance.
¶51 In order for the majority's reading of MCGO § 201.24(4.1)(2) to pass muster, one must assume that the Board of Supervisors' choice to sometimes use different, distinct, and disjunctive provisions was haphazard and is entitled to no consideration whatsoever. The majority fails to even attempt to reconcile how these choices might have meaning. Therein lies the Achilles heel in the majority's reasoning.
¶52 Due to the majority's significant misinterpretation of MCGO § 201.24(4.1)(2), I respectfully dissent from the majority opinion.
*172 ¶53 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this dissent.

I note that Milwaukee County also raises significant concerns regarding what it phrases as the duty to "maintain the status quo about mandatory subjects of bargaining" and its effect on the Milwaukee County General Ordinances. As I focus on the plain meaning of MCGO § 201.24(4.1)(2) based upon the ordinance's text, I will not further address Milwaukee County's argument regarding the status quo obligation.

Milwaukee Cty. Gen. Or. § 201.24(4.1)(2) creates seven groups of members who may be eligible for Rule of 75 pension benefits, but only subsections (4.1)(2)(a) and (4.1)(2)(b) are at issue here. The majority criticizes my purported failure to address or explain the effect of MCGO § 201.24(4.1)(2)(f)-(g). Subsections (4.1)(2)(f) and (4.1)(2)(g) did not appear in the Milwaukee County General Ordinances until July of 2016-approximately 20 months after this action was commenced. However, subsections (4.1)(2)(f) and (4.1)(2)(g) merely state that if an employee is covered by the terms of a CBA on September 29, 2011, and is no longer represented by either of the two enumerated unions at the date of retirement, the employee is eligible for a Rule of 75 pension. See § 201.24(4.1)(2)(f)-(g). The subsections seem to ensure that employees who fall within either subsection will have a pension despite no longer being represented by either of the two enumerated unions when they retire.

The remainder of subsection (4.1)(2)(a) limits eligibility for certain employees, such as "any member eligible under section 4.5," which addresses "deferred vested retirement," for certain sheriffs or correctional officers. MCGO § 201.24(4.1)(2)(a). Such limitations are not relevant for our purposes here.

Like subsection (4.1)(2)(a), subsection (4.1)(2)(b) states that it does not apply to "any member eligible under section 4.5." MCGO § 201.24(4.1)(2)(b).

Subsections (4.1)(2)(c) through (4.1)(2)(g) of the ordinance further define which members of specifically enumerated unions, who were covered by the terms of a CBA on a particular date, are eligible under the Rule of 75. See MCGO § 201.24(4.1)(2)(c)-(g).

While the cost to taxpayers cannot drive statutory interpretation, the majority's misinterpretation is not a distinction without a difference. Indeed, the majority's errant construction of MCGO § 201.24(4.1)(2) would result in Milwaukee County taxpayers providing an additional $6.8 million in benefits.

Subsections (3.11)(1)(c) and (3.11)(1)(d) operate similarly to subsection (3.11)(1)(a). See MCGO § 201.24(3.11)(1)(c)-(d).